IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| VC MACON GA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 18-cv-00388-TES |
| | ) |
| VIRGINIA COLLEGE, LLC and | ) |
| EDUCATION CORPORATION OF | ) |
| AMERICA, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT VIRGINIA COLLEGE, LLC, ITS PARENT DEFENDANT EDUCATION CORPORATION OF AMERICA, AND ITS AFFILIATE NEW ENGLAND COLLEGE OF BUSINESS AND FINANCE, LLC'S EMERGENCY MOTION FOR THE APPOINTMENT OF A RECEIVER AND ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

COMES NOW PLAINTIFF VC MACON GA, LLC, by and through counsel, and responds to Defendant Virginia College, LLC, its Parent Defendant Education Corporation of America, and Its Affiliate New England College of Business And Finance, LLC's Emergency Motion for the Appointment of A Receiver And Entry of A Temporary Restraining Order And Preliminary Injunction as follows.

I. **Equity Begets Equity**

There are a number of recognized traditional maxims of equity, several of which are applicable to the case at bar, namely: (1) equity follows the law[1], (2) one who comes into equity must come with clean hands, (3) one who seeks equity must do equity[2], and (4) equitable remedies are given as a matter of grace or discretion, not of right. Slater v. U.S. Steel Corp., 820

---

[1] *Also*, *see*, OCGA § 23-1-6 "Equity is ancillary, not antagonistic, to the law; hence, equity follows the law where the rule of law is applicable and follows the analogy of the law where no rule is directly applicable."
[2] *Also*, *see*, OCGA § 23-1-10 "He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action."

F.3d 1193, 1248 (11th Cir. 2016), reh'g en banc granted, opinion vacated (Aug. 30, 2016), on reh'g en banc sub nom. Slater v. United States Steel Corp., 871 F.3d 1174 (11th Cir. 2017), *citing 1 Dan B. Dobbs, Law of Remedies § 2.3(4) n.7 (2d ed.1993) at FN 207.*

It is axiomatic that equity demands that "[one] who seeks equity must do equity." Alps S., LLC v. Ohio Willow Wood Co., 808CV1893T35MAP, 2013 WL 12164771, at 2 (M.D. Fla. Mar. 19, 2013). A diligent creditor shall not needlessly be interfered with in the prosecution of his legal remedies. O.C.G.A. § 23-1-22.

In the present action, Plaintiff is the landlord of the current Virginia College location in Macon, Georgia. Additionally, the principals of Plaintiff are also the principals of the owner of the property currently housing the Virginia College location in Baton Rouge, Louisiana. Neither Plaintiff nor its principals are large national real estate holding companies. Instead the principals are 2 individuals from Mississippi who are themselves indebted to lenders in reliance upon the representations made by Defendants as an inducement to enter leases in Macon, Georgia and Baton Rouge, Louisiana. Should Plaintiff and its counterpart in Baton Rouge not be promptly made whole by Defendants, it is very likely that their next stop is bankruptcy court.

Defendants' motion is grounded in equity. In a highly unusual move, Defendants seek the appointment of a Receiver to preside over Defendants' own affairs. Defendants essentially admit they are incapable of managing their affairs and paying their debts as they come due. Plaintiff suggests that Defendants' current financial difficulties are self-inflicted. Plaintiff directs the Court's attention to Docket # 19-2 (the "Puffer Decl.") in the Northern District of Alabama, CAFN 18-cv-01698-AKK styled Education Corporation of America, et al. v. U.S. Department of Education (the "Alabama action"). In ¶¶13-14 and Exhs. D-E of the Puffer Decl., the declarant shows that Defendants "have sufficient available cash, budgeted for that purpose, to make these

[lease] payments." *Also*, *see*, p. 22 of the Puffer Decl. where Defendants acknowledge cash on hand in the amount of $17,722,107.63 as of October 15, 2018. In other words, Defendants intentionally withheld lease payments to Plaintiff, which Plaintiff suggests is a strategy or tactic to extract concessions. *See*, p. 15 of Docket # 19-1 (the "Swartzwelder email") in the Alabama action, where Swartzwelder[3] admits "One aspect of this strategy has been to delay certain rent payments while we continue our negotiations [with landlords]." The fact that Defendants failed to pay rent when money was available coupled with the fact that Defendants intentionally withheld payment was a strategy to pressure Plaintiff suggests unclean hands on the part of Defendants.

Moreover, for unexplained reasons there is evidence indicating that cash on hand belonging to Defendant Virginia College is actually held by Monroe Capital, who according to Defendants is part of the aggregation of lenders who will bid for the assets of ECA as the "Stalking Horse" once a Receiver is appointed. *See*, p. 9 of Docket # 2 of the Alabama action (the "Alabama Emergency Motion"). *Also*, *See*, p. 22 of the Puffer Decl. where Defendants acknowledge cash on hand in the amount of $17,722,107.63 as of October 15, 2018. These facts inexorably give rise to alter ego questions. Money belonging to Virginia College, and by extension owed to Plaintiff, is in the possession of a party who ultimately may be part of the purchasing group after debts and obligations have been wiped away. Defendants need to clean their hands as part of and as a condition to their request for relief from this Court.

## II.   Plaintiff's Support is Conditioned

Nevertheless, as mentioned during the TRO hearing on November 6, 2018 Plaintiff supports Defendants' request for appointment of a Receiver upon several conditions outlined below.

---

[3] Roger L. Swartzwelder is the EVP, General Counsel and Chief Compliance Officer for ECA.

a.     **Approval of Restructuring Plan**

To date Plaintiff has seen no Restructuring Plan. Plaintiff cannot agree to any plan sight unseen.

b.     **Plaintiff Cannot Be Afforded Lesser Rights Than Under Bankruptcy**

As the Court has astutely observed, Defendants are effectively debtors-in-possession and seek bankruptcy protection without actually filing a bankruptcy petition. In other words, they want the benefits of bankruptcy without the burden. Plaintiff cannot agree to such a one-sided result. In fact, in some respects Plaintiff would be better off in bankruptcy. For example, the enforcement of post-petition claims or the enforcement of claims through an adversary proceeding. A trustee or debtor-in-possession ("DIP") has the authority under Section 365, in the exercise of business judgment and subject to court approval, to assume or reject an executory contract or unexpired lease (except as provided in Sections 765 and 766). An executory contract or lease must be assumed or rejected in its entirety. In order to assume an executory contract, the DIP must provide *adequate assurance* (as set forth in Section 365(f)(2)) of future performance whether or not there has been a default in the debtor's performance of the executory contract or lease. Any party to the contract or lease can seek relief from the court to compel the DIP or the trustee to assume or reject the contract or lease.

If there has been a default in the trustee's or DIP's performance of an executory contract or lease, the trustee or DIP may only assume the executory contract or unexpired lease under Section 356(b)(1) if the trustee or DIP: (a) with certain exceptions noted below, cures or provides adequate assurance of prompt cure of the default; (b) compensates the other party for any actual pecuniary loss resulting from such default; and

(c) provides adequate assurance of future performance under the contract or lease. There is no requirement to cure a default or provide adequate assurance of cure with regard to:

(1) Any default involving breach of a provision relating to the insolvency or financial condition of the debtor before the commencement or closing of the case or any provision relating to the appointment of a trustee or custodian;[4] or

(2) Payment of any penalty rate provided for under the lease or satisfaction of any provision relating to a default arising from any failure of the debtor to perform non-monetary obligations under the executory contract or unexpired lease, if the default is impossible for the trustee or DIP to cure upon assumption of the lease. However, if the default involves failure to operate on the leased premises in accordance with the lease, the default must be cured upon assumption and the trustee or DIP must compensate the other party to the lease for its actual pecuniary loss.[5]

In the present action Defendants are essentially asking this Court to ignore these provisions by not requiring Defendants to bring current any past due balance. Likewise, Defendants are asking this Court to allow them to unilaterally terminate its leases with Plaintiff without regard to the impact upon Plaintiff. Furthermore, Defendants are asking this Court to allow them to remain in possession, but without any recourse in favor of Plaintiff in the event of an occurrence giving rise to liability. For example, if Defendants allowed hazardous materials on-site or if Defendants failed to pay ad valorem taxes or maintain the property. In other words, Defendants are requesting the Court to modify or substitute terms of the leases that would effectively allow Defendants to affirm and at the same time reject the leases on a schedule that is

---

[4] 11 U.S.C. §§ 365(b)(2)(A)-(C).
[5] 11 U.S.C. § 365(b)(2)(D).

convenient only to Defendants and without being required to surrender possession of the premises as required under 11 U.S.C. § 365(d)(4). Plaintiff cannot agree with this result.

However, Plaintiff can agree to a condition that requires Defendants to immediately affirm the leases with the contemporaneous requirement that all past due amounts immediately be brought current. Plaintiff also requests that it be allowed to enforce the terms and conditions of the lease through litigation, if necessary.

### c.  **Plaintiff Must Be Afforded a Commercially Reasonable Buyout**

11 U.S.C.A. § 502 provides in part: …

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that- - …

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of--
   (i) the date of the filing of the petition; and

   (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;….

The schools in Macon and Baton Rouge are "Teach Out" schools. This means Defendants intend to close these schools and simply return the keys at a time unilaterally chosen by Defendants and, of course, in a manner and schedule that is inconsistent with the terms of the leases. Plaintiff has been informed the closing will occur sometime in 2019, most likely in late Spring. Unlike the "Go Forward" schools, Plaintiff and its

principals face the task and expenses of re-letting and incurring unplanned if not substantial build-out to reconfigure the Macon and Baton Rouge properties.

It is customary in a commercial lease setting when a tenant wishes an early termination for the tenant to negotiate and pay an early termination or buy-out fee among other possible things. The expiration date for both leases involved in this action is December 31, 2015; however, Defendants have offered no early termination fee. Moreover, the date that Defendants plan to vacate the Macon and Baton Rouge locations is undetermined. Plaintiff and its principals have been informed it could be anywhere between late Spring and mid-Autumn 2019. At best, there would still be 5 years remaining under the leases for which Defendants intend to simply avoid. As the Court is aware, Defendants believe they will be profitable as early as January 2019. Additionally, the Court is also aware that Defendants intend to sell the Go Forward schools debt-free as part of the Restructuring Plan. The unfairness and inequity is indisputable.

Plaintiff can agree to and hereby requests a condition that requires Defendants to pay an early termination fee equal to the greater of one (1) year from the date of the Order appointing the Receiver or six (6) month from the date Defendants vacate the premises.

### d. Plaintiff Should Be Awarded Attorney's Fees as a Condition

Finally, Plaintiff should be awarded attorney's fees as a condition for appointment of the Receiver for 2 reasons. First, Defendants have not acted in good faith. Defendants want to cram down concessions it could not obtain through negotiation. Defendants offered a take it or leave it proposal that was not commercially reasonable. *See*, p. 91,

Docket # 1-1. Second, the leases provide for the recovery of attorney's fees. *See*, ¶24(e), p. 41 and ¶24(e), p. 72, Docket # 1-1.

Respectfully submitted this 19th day of October, 2018.

**FLYNN & GOTTLIEB, P.A.**

/s/ Jon A. Gottlieb
Jon A. Gottlieb, Esq.
Georgia Bar No. 303060
Attorneys for Plaintiff VC Macon, GA, LLC

**FLYNN & GOTTLIEB, P.A.**
800 Johnson Ferry Road, N.E.
Atlanta, Georgia 30342-1417
Tel: (404) 497-8000
Fax: (404) 497-8009
Email: jong@lawfg.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2018, I electronically filed **PLAINTIFF'S RESPONSE TO DEFENDANT VIRGINIA COLLEGE, LLC, ITS PARENT DEFENDANT EDUCATION CORPORATION OF AMERICA, AND ITS AFFILIATE NEW ENGLAND COLLEGE OF BUSINESS AND FINANCE, LLC'S EMERGENCY MOTION FOR THE APPOINTMENT OF A RECEIVER AND ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Alexander B. Feinberg
Ollie A Cleveland, III
MAYNARD COOPER & GALE
1901 Sixth Avenue North
Suite 2400, Regions/Harbert Plaza
Birmingham, Alabama 35203-2618
afeinberg@maynardcooper.com
tcleveland@maynardcooper.com

Stuart M. Brown
1201 N Market St Ste 2100
Wilmington, DE 19801
stuart.brown@dlapiper.com

Walker Steven Stewart
Jay Clifford Traynham
577 Mulberry St Suite 1500
Macon, GA 31201
walkerstewart@hbgm.com
jaytraynham@hbgm.com

This 13th day of November, 2018.

/s/ Jon A. Gottlieb
Jon A. Gottlieb, Esq.
Georgia Bar No. 303060
Attorney for Plaintiff VC Macon, GA, LLC

{00166613 1 }

**FLYNN & GOTTLIEB, P.A.**
800 Johnson Ferry Road, N.E.
Atlanta, Georgia 30342-1417
Tel: (404) 497-8000
Fax: (404) 497-8009
Email: jong@lawfg.com

{00166613 1 }