**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**


**VC MACON GA, LLC**

     **Plaintiff,**

 **v.**           **Civil Action No. 5:18-cv-00388-TES**


**VIRGINIA COLLEGE, LLC; and
EDUCATION CORPORATION OF
AMERICA,**


     **Defendants.**


**RECEIVER'S EXPEDITED MOTION FOR ORDER (1) TO SELL THE NEW
ENGLAND COLLEGE OF BUSINESS OTHER THAN IN THE ORDINARY COURSE
OF BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND
OTHER INTERESTS, (2) ESTABLISHING AND APPROVING BID PROCEDURES
FOR THE SALE OF THE NEW ENGLAND COLLEGE OF BUSINESS, AND (3) FOR
RELATED RELIEF**

    COMES NOW John F. Kennedy, solely in his capacity as receiver (the "Receiver") for

the receivership estate (the "Receivership Estate") of Education Corporation of America

("ECA"), Virginia College, LLC ("VCLLC") and New England School of Business and Finance,

LLC d/b/a New England College of Business ("NECB", collectively with "ECA" and VCLLC,

the "Receivership Entities"), and hereby moves the Court, pursuant to 28 U.S.C. §§ 2001, 2002,

and 2004 and Rule 66 of the Federal Rule of Civil Procedure (the "Rules") and this Court's

broad equitable powers, to enter an order (1) to sell substantially all assets of and/or ECA's

equity interests in NECB (the "Sale Assets") other than in the ordinary course of business, free

and clear of liens, claims, encumbrances and other interests, (2) establishing and approving sale

procedures (the "<u>Sale Procedures</u>") for the sale of the Sale Assets (the "<u>Sale</u>"), and (3) for related

relief (this "<u>Motion</u>"). In support of this Motion, the Receiver states as follows:

BACKGROUND

1.       On November 14, 2018, the Court entered the Order Appointing Receiver and

Preliminary Injunction (the "<u>Receivership Order</u>") [D.I. 26], under which John F. Kennedy was

appointed Receiver over the Receivership Estate.

2.       Under the Receivership Order, this Court granted the Receiver authority to, *inter alia*,

> [U]se, sell, or lease Receivership Property other than in the ordinary course of business, whether as a whole or in parts, as a going concern or otherwise, and to execute such documents, conveyances, and consents as may be required in connection therewith upon application to this Court for approval, and in connection with the exercise of any such powers or authorities as this Court may direct, to seek direction from the Court with respect to approval of marketing and notice procedures . . . to market and sell ECA's assets . . . and to seek further orders of this Court authorizing the sale of all or any such assets free and clear of all claims, liens, encumbrances and rights of others[.]

(*Receivership Order* at p. 7, ¶ 11.)

3.       NECB is a wholly-owned subsidiary of ECA. The Sale Assets consist of (i) all of

ECA's equity interests in NECB; or (ii) substantially all assets of NECB.  As explained later in

this Motion, potential purchasers will be given the option to elect, in their offers, whether to

purchase ECA's equity interests in NECB or NECB's assets.  Those assets include, without

limitation: (a) NECB's programs for administering Doctoral Degrees, Master's Degrees,

Bachelor's Degrees, Associate Degrees, and Graduate and Undergraduate Certificates; (b)

NECB's Corporate Partnership Program, which gives certain employers low-cost professional

development training in a variety of subjects; (c) all of NECB's tangible and intangible property;

(iv) an existing revenue stream of over $13,000,000.00; and (d) all contract rights held by

NECB.

4.      Certain secured lenders hold security interests in the Sale Assets, whose liens are more particularly described in the Emergency Motion for the Appointment of a Receiver and Entry of a Temporary Restraining Order and Preliminary Injunction [D.I. 10] (the "Receivership Motion"), the Receivership Order, the Receiver's Assented to Motion for Authority to Borrow Funds [D.I. 101] (the "Financing Motion") and the Court's Order (A) Authorizing the Receiver to Obtain Ninth Amendment Terms Loans and (B) Granting Security Interests and Liens [D.I. 105] (the "Financing Order"), which descriptions of such liens are incorporated herein by reference.

5.      Upon his appointment and after investigating the financial condition of the Receivership Estate, given the Receivership Entities' financial issues, difficulties in obtaining additional funding, and regulatory challenges, as more fully explained in the Receivership Motion, the Receiver's Initial Report [D.I. 99] (the "First Report") and as thoroughly discussed at multiple hearings before the Court, the Receiver has determined that it is in the best interests of the Receivership Estate and creditors and stakeholders to sell, subject to Court approval, the Sale Assets.

6.      For the purposes of maximizing the marketability and potential recovery from the Sale, the Receiver is offering to sell all of ECA's equity interests in NECB as an equity sale, or in the alternative, substantially all of the assets of NECB as an asset sale.  Purchasers will be provided with the option to elect, in their offers, whether to proceed by a purchase of equity or assets, and such election shall be among the factors considered by the Receiver in determining the highest and best offer.

7.      Prior to and after the entry of the Receiver Order, Parchman, Vaughan & Company, L.L.C. ("Parchman"), commenced a comprehensive effort to solicit interest from

potential purchasers for the Sale Assets. The Receiver, through Parchman and others, has developed, and continues to develop, a list of prospective purchasers for the Sale Assets. Specifically, as a result of these efforts, the Receiver has received interest from multiple potential purchasers who have already begun conducting due diligence on the Sale Assets. The Receiver expects to locate additional interested parties through his continued marketing efforts.   On January 5, 2019, Parchman resigned from its position as financial advisor to the Receivership Entities and the Receiver is in the process of retaining Carl Marks Advisory Group, LLC ("CMAG") to serve as the new financial advisor.

8.      In the exercise of the Receiver's prudent business judgment, the Receiver has decided to sell the Sale Assets. Given the degree of interest expressed in acquiring the Sale Assets, the limited market for the Sale Assets, and the urgent time frame for the Sale, and to ensure that the highest or otherwise best value is derived from the Sale, the Receiver has determined that it is in the best interests of the Receivership Estate and creditors and stakeholders sell the Sale Assets in accordance with the Sale Procedures described more specifically herein and attached hereto as **Exhibit "A"**.

9.      Consequently, Receiver files this Motion and respectfully requests that the Court enter an order approving the Sale Procedures and Sale and granting related relief.

<u>RELIEF REQUESTED</u>

By this Motion, the Receiver seeks the entry of two orders of this Court: (i) an order, in the form attached hereto as **Exhibit "B"** (the "Sale Procedures Order"), (a) approving the Sale Procedures governing the Sale of the Sale Assets, scheduling, on an expedited basis, a hearing on the Motion (the "Sale Procedures Motion Hearing") and (b) setting objection and bidding deadlines with respect to the Sale, and granting related relief; and (ii) an order approving the

Sale(s) of the Sale Assets, free and clear of liens, claims, encumbrances and granting related relief after the conclusion of the Auction.

JURISDICTION

10.     The Receiver files this Motion pursuant to 28 U.S.C. §§ 2001, 2002, and 2004, Rule 66 of the Rules and this Court's broad equitable powers.

11.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1332 and its equitable jurisdiction. *See Northwest Bank Wisconsin, N.A. v. Malachi Corp.*, 245 F. App'x 488 (6th Cir. 2009).

12.     This Court has jurisdiction over the Sale Assets pursuant to 28 U.S.C. §§ 754 and 1692.

13.     The Receiver is serving a copy of the Motion on the following parties: (i) all parties appearing in this case; (ii) all known creditors and parties in interest, including all entities claiming a lien on any property to be sold; (iii) all counterparties to any contract to which is NECB a party; (iv) all relevant government, regulatory and accreditor entities; and (v) all other parties requesting notice (the "Service Group").

AUTHORITY TO GRANT REQUESTED RELIEF

14.     A federal receiver has the power to dispose of property of the receivership estate when it appears that a receivership is continuing an enterprise that does not show evident signs of working out for the benefit of creditors. *See Jones v. Village of Proctorville*, 290 F.2d 49, 50 (6th Cir. 1961). Courts appointing a receiver "should see that the business is liquidated as economically and speedily as possible, unless its continuance is demonstrably beneficial to creditors." *Id.* (citing *Kingsport Press, Inc. v. Brief English Sys.*, 54 F.2d 497, 501 (2d Cir. 1931)). 28 U.S.C. §§ 2001 and 2004 provide for a receiver sale of real and/or personal property.

28 U.S.C. §§ 2001, 2004 (28 U.S.C. § 2004 provides that "any personalty sold under any order or decree of any court of the United States shall be sold in accordance with section 2001 of this title, unless the court orders otherwise."). Section 2001(a) and 2004 permit a public sale of realty and/or personal property in the district wherein the receiver was first appointed, at the courthouse of the county, parish or city situated therein in which the greater part of the property in such district is located, or on the premises or some parcel thereof located in such county, parish or city, as the court directs, unless the court orders the sale of the property or one or more parcels thereof in one or more ancillary districts. *Id.* 28 U.S.C. § 2002 governs notice of a public sale of realty and/or personal property and provides for such notice to be published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state or judicial district of the United States where the realty and/or personal property is situated. 28 U.S.C. § 2002. A true and correct copy of the proposed Notice of Public Sale to be published in accordance with 28 U.S.C. § 2002 is attached hereto as **Exhibit "C"**.

15.     The Court has wide discretion in judging whether a receiver's sale is fair in terms and results in and serves the best interests of the estate. *Fleet National Bank v. H&D Entm't, Inc.*, 96 F.3d 532 (1st Cir. 1996) (citing *United States v. Peter*, 777 F.2d 1294, 1298 n. 6 (7th Cir. 1985) and *United States v. Branch Coal*, 390 F.2d 7, 10 (3rd Cir. 1968)). Section 2001 "contemplates compliance with certain procedures designed to protect the best interest of the estate." *Tanzer v. Huffines*, 412 F.2d 221 (3rd Cir. 1969). The Court has broad discretion in setting the terms of conditions of a sale under 28 U.S.C. § 2001. *United States v. Hundwardsen*, 39 F.Supp.2d 1157 (N.D. Iowa 1999); *see United States v. Garcia*, 474 F.2d 1202, 1206 (5th Cir. 1973). "[T]he court is vested with a reasonable measure of judicial discretion in determining

whether a sale of property made by [a fiduciary] shall be confirmed or a resale ordered, and that the exercise of that discretion in confirming a sale will not be disturbed on appeal except in case of abuse." *Breeding Motor Freight Lines, Inc. v. Reconstruction Fin. Corp.*, 172 F.2d 416, 421-22 (10th Cir. 1949) (citing *Pewabic Mining Co. v. Mason*, 145 U.S. 349 (1892)). A judicial sale "made with notice and in the manner prescribed by law will not be denied confirmation or be set aside for mere inadequacy in price unless the price is so gross as to shock the conscience of the court, coupled with slight additional circumstances indicating unfairness, such as chilled bidding." *Id.* at 424 (finding no abuse of discretion where a court confirmed a special master's sale of property in spite of the fact that the special master failed to comply strictly with 28 U.S.C. §§ 2001, 2002 and 2004, the published sale notice had multiple defects and the special master did not exactly follow the established auction procedures).

16.     Lastly, the Court has the power to sell the assets of the Receivership Estate free and clear of all liens, claims and encumbrances. The U.S. Supreme Court has recognized that federal district courts inherently have the power under the court's broad equitable powers to foreclose out liens through receivership sales. *First Nat'l Bank v. Shedd*, 121 U.S. 74 (1887); *see also Tanzer*, 412 F.2d at 222-23 (holding that Court may grant expedited sale of receivership assets without strict compliance with 28 U.S.C. §§ 2001, 2002 and 2004 where circumstances warrant such relief).

17.     In the instant case, the Receivership Estate consists of, among other things, certain tangible and intangible personal property owned by NECB as well as ECA's equity interests in NECB. The Receiver proposes to sell such assets at an auction pursuant to the express requirements of 28 U.S.C. §§ 2001, 2002 and 2004. As described in the Sale Procedures in more detail, in the interest of time and financial and regulatory constraints on the Receivership

Estate, the Receiver intends, in the first instance, to conduct a "naked" auction of the Sale Assets in order to begin the statutory noticing process. However, as negotiations with potential purchasers, accreditors and regulators, as well as the circumstances of the Receivership Estate, evolve during the sale process, the Receiver requests the right under the Sale Procedures to designate, with the Court's approval, a "stalking horse purchaser" to acquire the Sale Assets at an auction, subject to higher or better bids in the event the Receiver determines that this alternative will generate a greater recovery for the Receivership Estate under the circumstances.

18.     The Receiver has also requested expedited approval of this Motion based on the exigent circumstances of this case and requests that the Court set a hearing on this Motion as soon as possible.

19.     Lastly, the Court has the power to order the sale free and clear of all liens, claims and encumbrances, and further order that such liens attach to the proceeds of the sale. *First Nat'l Bank v. Shedd*, 121 U.S. 74 (1887) (recognizing the power of federal district courts to sell property free and clear of all liens under the court's broad equitable powers to foreclose out liens through receivership sales). A sale free and clear of all liens, claims and encumbrances is necessary to maximize the value of the Sale Assets.

### RECEIVER'S REASONABLE BUSINESS JUDGMENT FOR SALE OF ASSETS

20.     The U.S. Supreme Court has held that "every trustee or receiver of an estate has the duty of exercising reasonable care in the custody of the fiduciary estate, unless relieved of such duty by agreement, statue or order of court" under federal common law. *United States v. Howard*, 302 U.S. 445, 450 (1938). However, a receiver's management decisions are to be afforded "the deference of the business judgment rule[.]" *Golden Pac. Bancorp v. Fed. Dep. Ins. Corp.*, 2010 WL 31875395, at *9 (S.D.N.Y. Dec. 26, 2002).

21.     Good cause exists to authorize the Sale and Sale Procedures on an expedited basis pursuant to 28 U.S.C. §§ 2001, 2002 and 2004, Rule 66 of the Rules and this Court's broad equitable powers. The proposed Sale and Sale Procedures are in the best interests of the Receivership Estate and creditors and stakeholders. Without limitation, financial and regulatory exigencies justify a prompt sale of the Sale Assets. The Receiver has, and will continue to, negotiate at arms-length with all prospective purchasers and reserves the right to select a stalking horse purchaser prior to the Auction, subject to the Court's approval. While "insiders" of the Receivership Entities are not expressly precluded from bidding on some or all of the assets of the Receivership Estate, the Sale Procedures are not designed to give insiders any advantage. The Sale Assets will be exposed to the market pursuant to the Sale Procedures, and such Sale Procedures will ensure that the Receiver obtains the highest or otherwise best offer for the Sale Assets under the circumstances.

22.     Here, the Receiver has developed an arms-length process set forth in the Sale Procedures that is in accordance with applicable law and provides the Receiver with the best opportunity to maximize value for the Receivership Estate. Under the circumstances, the Sale and Sale Procedures are necessary to preserve the value of the Receivership Estate for the benefit of creditors and stakeholders.

### CONCLUSION AND PRAYER FOR RELIEF

The Receiver requests that the Court grant this Motion in all respects, specifically:

a.     scheduling the Sale Procedures Hearing on an expedited basis;

b.     entering an order, substantially similar to the Sale Procedures Order, approving the Sale Procedures governing the Sale;

    c.       following the Auction and a Sale Hearing, entering an order approving the Sale of the Sale Assets, as determined at the Auction, free and clear of liens, claims, encumbrances, and interests; and

    d.       granting such other relief the Court may deem just and equitable.

Respectfully submitted this the 11th day of January, 2019.

> */s/ James F. Banter*
> James F. Banter
> One of the Attorneys for the Receiver
> GA Bar Number 581797

**OF COUNSEL:**
JAMES, BATES, BRANNAN, GROOVER LLP
231 Riverside Drive
Macon, Georgia 31201
Phone 478/742-4280
Fax 478/742-8720

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy on the following parties electronically through the CM/ECF system on this the 11th day of January, 2019, and additionally all known interested entities will be served and a certificate of service will be filed separately for service of those entities that have not filed an appearance before this court.

*/s/ James F. Banter*
James F. Banter
One of the Attorneys for the Receiver
GA Bar Number 581797

**EXHIBIT "A"**

**SALE PROCEDURES**

## Notice of Public Auction

In accordance with 28 U.S.C. §§ 2001, 2002 and 2004, the Receiver shall publish a Notice of Receiver Sale with the *Wall Street Journal* and the *Boston Globe* for at least four (4) weeks prior to the proposed public auction of the Sale Assets (the "Auction"). The Receiver shall also contact and provide a copy of the Notice of Receiver Sale to all of the persons or entities that the Receiver has identified as potentially interested in acquiring the Sale Assets.

## Due Diligence

### *Access to Diligence Materials*

To participate in the bidding process and to receive access to due diligence (the "Diligence Materials"), a party must submit to the Receiver an executed confidentiality and non-disclosure agreement in form and substance satisfactory to the Receiver and evidence demonstrating the party's financial and regulatory capability with respect to purchasing the identified Sale Assets.

The Receiver has established an electronic data room to provide all interested parties with access to Diligence Materials. A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Party". All due diligence requests must be directed to Carl Marks Advisory Group, LLC ("CMAG"), c/o Joseph R. D'Angelo, 900 Third Ave., 33rd Floor, New York, NY 10022, telephone (917) 968-9650, email jdangelo@carlmarks.com.

Included with the Diligence Materials will be drafts of agreements to purchase the Sale Assets as equity or asset purchases (the "Form Agreements").

### *Due Diligence from Bidders*

Each Preliminary Interested Party and Qualified Bidder (as defined herein) shall comply with all reasonable requests for additional information and due diligence access by the Receiver or its advisors regarding such Bidder (as defined herein) and its contemplated transaction. Failure by a Preliminary Interested Party to comply with such reasonable requests for additional information and due diligence access may be a basis for the Receiver to determine that such bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with requests for additional information and due diligence access may be a basis for the Receiver to determine that a bid made by such Qualified Bidder is not a Qualified Bid. All Bidders must complete their due diligence by no later than the Bid Deadline (described below).

## Bid Qualification Process

To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Receiver to satisfy each of the conditions set forth below. A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

(a)   Good Faith Deposit: Each Bid must be accompanied by a cash deposit in the amount of ten percent (10%) of the total purchase price (the "Good Faith

Deposit"), which Good Faith Deposit shall not exceed $500,000, to the trust account of James, Bates, Brannan, Groover LLP, attorneys for the Receiver, pursuant to wire instructions to be provided by the Receiver.

(b)    <u>Identification of Bidder and Proposed Transaction</u>: Each Bid must: (i) fully disclose the Bidder's identity and the identity of the entity(ies), if any, which shall be directly or indirectly acquiring a portion of the Sale Assets under or in connection with the Bid, as well as any such party's(ies') relationship(s) with the Receiver, any Receivership Entity, any other Bidder and any actual or potential creditor of the Receivership Estate, and (ii) state with specificity the Sale Assets to be acquired and the liabilities the Bidder intends to assume. Furthermore, each Bid must be accompanied by a purchase agreement that is based on the relevant Form Agreement and must include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a sale transaction (the "<u>Modified Purchase Agreement</u>"). A Bid shall also include a copy of the Modified Purchase Agreement marked against the relevant Form Agreement to show all changes requested by the Bidder (including those related to purchase price).

(c)    <u>Bids for Less than All of the Sale Assets</u>: Each Bid must offer to purchase a portion of, or substantially all of, the Sale Assets; <u>provided, however,</u> that if the Bid is for a portion of the Sale Assets, the Bid must expressly identify the specific Sale Assets to be purchased and excluded under the Modified Purchase Agreement.

(d)    <u>Corporate Authority</u>: Each Bid must include written evidence reasonably acceptable to the Receiver demonstrating appropriate corporate authorization to consummate the proposed Sale; provided, however, that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale, then the Bidder must furnish written evidence satisfactory to the Receiver of the approval of the Sale by any direct or indirect equity holder(s) of such Bidder.

(e)    <u>Proof of Financial Ability to Perform</u>: Each Bid must include written evidence that the Receiver concludes, in consultation with his advisors, that the Bidder has the necessary financial ability and/or has received funding commitments sufficient in the aggregate to consummate the Sale contemplated thereby, including one of the following: (i) evidence of sufficient cash to consummate the Sale, (ii) an unconditional lending commitment from a recognized banking institution in the amount of any cash portion of the purchase price of such Bid, (iii) the posting of an unconditional, irrevocable letter of credit from a recognized banking institution issued in favor of the Receiver in the amount of any cash portion of the purchase price of such Bid, or (iv) a guarantee from another person or entity in favor of the Receiver in the amount of any cash portion of the purchase price of such Bid (with such person or entity providing written evidence of its financial wherewithal reasonably acceptable to the Receiver). Such financial information shall include the following:

(1)    contact names and numbers for verification of financing sources;

(2)    the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Receiver; and

(3)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Receiver demonstrating that such Bidder has the ability to close the Sale.

(f)    <u>Proof of Regulatory Ability to Perform</u>: Each Bid must include evidence that the Receiver concludes, in consultation with his advisors, demonstrates that the Bidder has the ability to obtain all necessary regulatory approvals to consummate the Sale.

(g)    <u>Appearance at Auction</u>: Each Bid must confirm that such Bidder, or an authorized representative, will appear in person at the Auction, with a representative of such Bidder with decision making authority to be immediately available via video or teleconference.

(h)    <u>Bid Deadline</u>: Each Bid must be submitted in writing to the following parties: (i) Receiver's counsel, c/o James F. Banter, Esq., James, Bates, Brannan, Groover LLP, 231 Riverside Drive, Macon, Georgia 31201, telephone (478) 742-4280, facsimile (478) 742-8720, email JBanter@JamesBatesLLP.com; (ii) Mike Ranchino, Carroll Consulting, LLC, 1785 Kelley Drive, Hoffman Estates, IL 60192, telephone (312) 480-7082, mranchino.carroll@gmail.com; (iii) NECB's counsel, c/o Michael J. Goldberg, Casner & Edwards, LLP, 303 Congress Street, Boston, Massachusetts 02210, telephone (617) 426-5900, facsimile (617) 426-8810, email goldberg@casneredwards.com; (iv) Carl Marks Advisory Group, LLC, c/o Joseph R. D'Angelo, 900 Third Ave., 33rd Floor, New York, NY 10022, telephone (917) 968-9650, email jdangelo@carlmarks.com; and (v) Monroe Capital Management Advisors, LLC's counsel, c/o Ivy Cadle, 300 Mulberry St, Ste 201, Macon, GA 31201, telephone (478) 765-1823, email icadle@bakerdonelson.com, so as to be actually received no later than February 20, 2019 at 5:00 p.m. Prevailing Eastern Time (the "Bid Deadline").

Each Bid that is actually received from a Bidder before the Bid Deadline and which meets the above requirements for shall collectively constitute a "Qualified Bid", and such Bidder shall be a "Qualified Bidder". The Receiver reserves the right to not consider any Bids received after the Bid Deadline.

As soon as reasonably practicable prior to (but no later than two (2) days before) the Auction, the Receiver shall notify each Bidder if they have or have not been selected as a Qualified Bidder. In addition, each Qualified Bidder will receive notice from the Receiver of all Qualified Bidders.

The Receiver may set such additional conditions for Qualified Bids as the Receiver determines will promote an efficient and value-maximizing bid process, provided, however, that such terms and conditions do not conflict materially with these Sale Procedures.

The Good Faith Deposit of a Bidder who is not determined to be a Qualified Bidder shall be returned to such Bidder within two (2) business days after the Receiver's designation of Qualified Bidders.

### Stalking Horse Bidder and Bid Protections

No later than 20 days prior to the Bid Deadline, the Receiver shall have the right, and subject to higher or better offers at the Auction, to seek the Court's approval on an expedited basis to enter into one or more purchase agreements (each, a "Stalking Horse Agreement") with any entity (a "Stalking Horse Bidder") for all or any portion of the Sale Assets. The Receiver shall further have the right to set terms and conditions, including deadlines, with respect to the solicitation and/or acceptance of stalking horse bids as the Receiver shall determine are desirable under the circumstances to facilitate the selection of a Stalking Horse Bidder and to maximize the value of the Sale Assets to be received from the Auction.

In the event the Receiver enters into a Stalking Horse Agreement, the Receiver shall have the right, subject to the Court's approval, to grant appropriate bid protections, including the payment of a break-up fee and expense reimbursement, to a Stalking Horse Bidder, which bid protections shall be disclosed to all interested parties via public filing with the Court. The Receiver shall be authorized to require Qualified Bids and subsequent Bids to account for such Court-approved bid protections.

For the avoidance of doubt, the Receiver shall be under no obligation to choose a Stalking Horse Bidder for any of the Sale Assets.

### Auction

If one or more Qualified Bids for the Sale Assets are received by the Bid Deadline, and the Receiver decides to proceed with the Auction, the Receiver will conduct the Auction to determine the highest or otherwise best Qualified Bid for the Sale Assets. The Receiver's determination shall take into account any factors the Receiver reasonably deems relevant to the value of the Qualified Bid to the Receivership Estate and may include, among other things, the following: (i) the total consideration to be received by the Receivership Estate; and (ii) the likelihood of the Bidder's ability to close a transaction and the timing thereof.

*Time and Location*

The Auction shall be held on February 26, 2019 at 9:00 a.m. Prevailing Eastern Time, at James, Bates, Brannan, Groover LLP, 231 Riverside Drive, Macon, Georgia 31201, and may be continued from time to time at the Receiver's discretion.

*Eligible Participation*

Only parties that the Receiver determines in accordance with these Sale Procedures are Qualified Bidders may participate in the Auction.

*Permitted Attendees*

Only the Receiver, Qualified Bidders, Receivership Entities and Secured Creditors (described below), in each case, along with their representatives and advisors (collectively, the "Permitted Attendees"), shall be permitted to attend the Auction. Only Qualified Bidders will be entitled to make any Bids at the Auction.

*The Receiver Shall Conduct the Auction*

The Receiver and his advisors shall direct and preside over the Auction. Subject to his compliance with these Sale Procedures, the Receiver may conduct the Auction in the manner he determines will result in the highest, best, or otherwise superior offer for any or all of the Sale Assets.

*Auction Procedures*

At the commencement of the Auction, the Receiver shall describe the terms of the highest or otherwise best Qualified Bid or Qualified Bids received prior to the Bid Deadline (each such highest or otherwise best Qualified Bid, the "Auction Baseline Bid"). Each Qualified Bidder participating in the Auction must confirm that it (i) has not engaged in any collusion with respect to the bidding or sale of any of the assets described herein and (ii) has reviewed and understands and accepts the Sale Procedures.

The Receiver may sequester participating Qualified Bidders and other Permitted Attendees in separate rooms and meet and negotiate individually with each such Qualified Bidder to obtain the highest and best offer for the Sale Assets. In such event, the Receiver may periodically convene a meeting of all participating Qualified Bidders and Permitted Attendees to discuss the status of the Bids, and the Auction shall not be terminated until all participating Qualified Bidders have been advised of the highest and best Bid and given an opportunity to make a higher and better Bid.

*Right to Credit Bid*

Any creditor who the Receiver, in his sole discretion and in consultation with his advisors, determines has a valid and perfected lien on any of the Sale Assets (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims, unless otherwise ordered by the Court.

*Overbids*

An "Overbid" is any bid made at the Auction, in accordance with the requirements set forth herein, subsequent to the Receiver's announcement of the respective Auction Baseline Bid.

17

To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions (the "Overbid Conditions"):

(a)   Minimum Overbid Increments: The Initial Overbid, if any, shall provide for total consideration to the Receiver with a value that exceeds the value of the consideration under the Auction Baseline Bid by an incremental amount that is not less than the sum of (x) $ 150,000.00 (the "Minimum Overbid Increment") plus (y) in the event that the Receiver has entered into a Court-approved Stalking Horse Agreement with respect to the Sale Assets to which the Overbid relates, the aggregate amount of any Bid Protections under such Stalking Horse Agreement, including any approved break-up fee and expense reimbursement, and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment. The Receiver reserves the right to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction. Additional consideration in excess of the amount set forth in the respective Auction Baseline Bid may include cash and/or noncash consideration, *provided, however,* that the value for such non-cash consideration shall be determined by the Receiver in his reasonable business judgment.

(b)   Remaining Terms Are the Same as for Qualified Bids: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth herein, provided, however, that the Bid Deadline shall not apply. Any Overbid must include the amount and the form of consideration of the Overbid. For the avoidance of doubt, any Overbid shall be irrevocable and shall remain open and binding on the Bidder in accordance with these Sale Procedures and the conditions for a Qualified Bid.

At the Receiver's discretion, to the extent not previously provided (which shall be determined by the Receiver), a Bidder submitting an overbid at the Auction must submit, as part of its Overbid, written evidence, as the Receiver, in his business judgment, may request, demonstrating such Bidder's ability to consummate the sale transaction proposed by such Overbid.

(c)   Announcement of Overbids: A Bidder submitting an Overbid at the Auction shall announce at the Auction the material terms of such Overbid, including the total amount and type of consideration offered in such Overbid.

(d)   Consideration of Overbids: The Receiver reserves the right, in his reasonable business judgment, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Receiver and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Receiver with such additional evidence as the Receiver, in his reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed sale transaction at the prevailing Overbid amount.

The Receiver reserves the right to amend the Overbid Conditions during the Auction to the extent the Receiver deems such amendment(s) necessary and in the best interest of the Receivership Estate.

### *Closing the Auction*

The Auction shall continue until there is only one Qualified Bid for the Sale Assets (or combination of Qualified Bids that, in total, encompass all of the Sale Assets) that the Receiver determines in his reasonable business judgment, after consultation with his advisors, produces the highest or otherwise best Qualified Bid(s) (such Qualified Bid(s) a "Successful Bid," and each Bidder submitting such Successful Bid, a "Successful Bidder").

The Successful Bidder shall submit fully executed sale and transaction documents memorializing the terms of its respective Successful Bid prior to the conclusion of the Auction and shall remit the Good Faith Deposit to the Escrow Account within 24 hours after the conclusion of the Auction.

Promptly following the conclusion of the Auction, the Receiver shall announce the Successful Bid(s) and Successful Bidder(s) and shall file with the Court notice of the Successful Bid(s) and Successful Bidder(s). The Receiver shall not consider any Bids submitted after the conclusion of the Auction.

### *Backup Bidder*

Notwithstanding anything in the Sale Procedures to the contrary, if an Auction is conducted, the Receiver may enter into an agreement with any non-Successful Bidder (or non-Successful Bidders), as determined by the Receiver, in the exercise of his reasonable business judgment, after consultation with its advisors, that designates such non-Successful Bidder or Bidders as a backup bidder (collectively, the "Backup Bidder"). In the event the Successful Bidder fails to close a transaction of the Sale Assets, the Backup Bidder shall be obligated to close a transaction of the Sale Assets on the terms set forth in its final Qualified Bid submitted at the Auction (the "Back-Up Bid").

## Sale Hearing

The Successful Bid will be subject to approval by the Court. The hearing to approve the sale of the assets subject to the Sale Procedures Order to the Successful Bidder (the "Sale Hearing") is scheduled to take place on _____. The Sale Hearing may be adjourned from time to time without further notice to parties in interest other than by announcement of the adjournment in open court on the date scheduled for such Sale Hearing(s) or a notice filed with the Court, as applicable.

Following the Sale Hearing, if the Successful Bidder fails to consummate its transaction, the Receiver may, with the consent of the Backup Bidder, designate the Backup Bidder to be the new Successful Bidder, and the Receiver will be authorized, but not required, to consummate the transaction or transactions with the Backup Bidder (as the Successful Bidder) without further

order of the Court. In such case, the Receiver specifically reserves the right to seek all available damages from the defaulting Successful Bidder.

## Additional Procedures

The Receiver reserves the right to modify the Sale Procedures or impose, at or prior to the Auction, different and/or additional terms and conditions on the Sale subject to the Sale Procedures; *provided, however,* that such modifications are not materially inconsistent in any material respect with the Sale Procedures.

### Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders at the Auction shall be deemed to have (i) consented to the jurisdiction of the Court to enter an order or orders, which shall be binding in all respects, in any way related to the Receiver, the Receivership Estate, the Sale Procedures, the Sale Assets, the Auction, the Sale or the construction and enforcement of any Qualified Bid or related documents and (ii) waived any right to a jury trial in connection with any disputes relating to the Receiver, the Receivership Estate, the Sale Procedures, the Sale Assets, the Auction, the Sale or the construction and enforcement of any Qualified Bid or related documents.

### Return of Good Faith Deposits

The Good Faith Deposit of the Successful Bidder or Successful Bidders shall be held in the Escrow Account, but shall not become property of the Receivership Estate absent further order of the Court except as set forth herein. If a Successful Bidder timely closes its winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

**EXHIBIT "B"**

**PROPOSED SALE PROCEDURES ORDER**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

**VC MACON GA, LLC**

     **Plaintiff,**

  **v.**           **Civil Action No. 5:18-cv-00388-TES**

**VIRGINIA COLLEGE, LLC; and**
**EDUCATION CORPORATION OF**
**AMERICA,**

     **Defendants.**

**ORDER GRANTING RECEIVER'S EXPEDITED MOTION FOR ORDER (1) TO SELL THE NEW ENGLAND COLLEGE OF BUSINESS OTHER THAN IN THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (2) ESTABLISHING AND APPROVING BID PROCEDURES FOR THE SALE OF THE NEW ENGLAND COLLEGE OF BUSINESS, AND (3) FOR <u>RELATED RELIEF</u>**

    This matter came to be heard upon the Receiver' Motion for an order (1) to sell substantially all assets of NECB[1] other than in the ordinary course of business, free and clear of liens, claims, encumbrances, and other interests, (2) establishing and approving sale procedures for the sale of substantially all assets of and/or equity interests in NECB outside the ordinary course of business, free and clear of all liens, claims, encumbrances and interests, and (3) for related relief (the "<u>Motion</u>"); and it appearing that the notice of the Motion provided is appropriate and sufficient under the circumstances and that no other or further notice need be given; and it appearing that the relief requested is in the best interests of the Receivership Estate, its creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

---

[1] Unless otherwise defined herein, capitalized terms shall have the meaning given to them in the Motion.

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**

1.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure (the "Rules").

2.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3.      The Court has jurisdiction over this matter and over the property of the Receivership Estate pursuant to 28 U.S.C. §§ 2001, 2002 and 2004 and Rule 66 of the Rules and this Court's broad equitable powers.

4.      Proper, timely, adequate, and sufficient notice of the Motion have been provided. Such notice was sufficient and appropriate under the particular circumstances. No other or further notice of the Motion or of the entry of this Order is necessary or shall be required.

5.      A reasonable opportunity to object or be heard regarding the requested relief in the Motion and this Order has been afforded to all interested persons and entities, including, without limitation, all parties to this action and all persons or entities known to the Receiver that have or have asserted a lien on, or security interest in, all or any portion of the assets of the Receivership Estate.

6.      The Receiver has the power and authority to foreclose upon and sell the Sale Assets as defined in the Motion, free and clear of all liens, claims and encumbrances (with such liens, claims and encumbrances, if any, to attach to the sales proceeds), at public auction pursuant to the Receivership Order, the Sale Procedures, 28 U.S.C. §§ 2001, 2002 and 2004, Rule 66 and this Court's broad equitable powers.

7.      Upon his appointment and after investigating the financial condition of the Receivership Estate, given the Receivership Entities' financial issues, difficulties in obtaining additional funding, and regulatory challenges, as more fully explained in the Receivership Motion, the First Report and as discussed at multiple hearings before this Court, the Receiver has determined that it is in the best interests of the Receivership Estate and creditors and stakeholders to sell the Sale Assets.

8.      Prior to and after the entry of the Receiver Order, a comprehensive effort to solicit interest from potential purchasers for the Sale Assets was commenced by Parchman and the Receiver. The Receiver, through Parchman and others, has developed, and continues to develop, a list of prospective purchasers for the Sale Assets. The Receiver's existing and continued marketing efforts, combined with the publication required by the Sale Procedures and 28 U.S.C. § 2002, are reasonable and sufficient.

9.      The Receiver has demonstrated a sufficient basis and compelling circumstances requiring the entry of this Order and the Sale of the Sale Assets in accordance with the Sale Procedures, and such actions are appropriate exercises of the Receiver's reasonable business judgment and in the best interests of the Receivership Estate and its creditors and stakeholders.

10.     The Sale Procedures set forth in the Order are non-collusive, created in good faith, substantively and procedurally fair to all parties and will enable the Receiver to obtain the highest value for the Sale Assets for the Receivership Estate and its creditors.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY:**

**ORDERED** that the Motion is **GRANTED** as set forth herein; and it is further **ORDERED** that the Sale Procedures, as attached hereto as "Exhibit 1", are hereby approved in their entirety; and it is further

**ORDERED** that the Receiver may pursue the sale of the Sale Assets in accordance with the Sale Procedures; and it is further

**ORDERED** that, in the event of a public auction pursuant to the Sale Procedures, Receiver will conduct the Auction in accordance with the Sale Procedures on February 26, 2019 at 9:00 a.m. Prevailing Eastern Time at James, Bates, Brannan, Groover LLP, 231 Riverside Drive, Macon, Georgia 31201, subject to any continuance deemed by the Receiver to be appropriate; and it is further

**ORDERED** that the Sale Hearing shall be held in this Court on _____ at _____ Prevailing Eastern Time, or such other time as the Court determines; and it is further

**ORDERED** that any objection on any basis that any party has to the proposed Sale must be in writing and must be filed with the Court no later than _____ (Prevailing Eastern Time) on the date that is _____ calendar days prior to the date of the Sale Hearing (the "Objection Deadline") and served on the following notice parties so as to be received by no later than the Objection Deadline: i) Receiver's counsel, c/o James F. Banter, Esq., James, Bates, Brannan, Groover LLP, 231 Riverside Drive, Macon, Georgia 31201, telephone (478) 742-4280, facsimile (478) 742-8720, email JBanter@JamesBatesLLP.com; (ii) Mike Ranchino, Carroll Consulting, LLC, 1785 Kelley Drive, Hoffman Estates, IL 60192, telephone (312) 480-7082, mranchino.carroll@gmail.com; (iii) NECB's counsel, c/o Michael J. Goldberg, Casner & Edwards, LLP, 303 Congress Street, Boston, Massachusetts 02210, telephone (617) 426-5900,

facsimile (617) 426-8810, email goldberg@casneredwards.com; (iv) Carl Marks Advisory Group, LLC, c/o Joseph R. D'Angelo, 900 Third Ave., 33rd Floor, New York, NY 10022, telephone (917) 968-9650, email jdangelo@carlmarks.com; and (v) Monroe Capital Management Advisors, LLC's counsel, c/o Ivy Cadle, 300 Mulberry St, Ste 201, Macon, GA 31201, telephone (478) 765-1823, email icadle@bakerdonelson.com; and it is further

**ORDERED** that the Receiver shall, in accordance with 28 U.S.C. §§ 2001, 2002 and 2004, a Notice of Receiver Sale attached hereto as "Exhibit 2" with the *Wall Street Journal* and the *Boston Globe* for at least four (4) weeks prior to the proposed Auction, which publication shall be deemed due, timely, good and sufficient notice of the entry of this Order and all proceedings to be held thereon; and it is further

**ORDERED** that any person seeking to participate as a bidder at the Auction shall comply with the Sale Procedures; and it is further

**ORDERED** that each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale; and it is further**;** and it is further

**ORDERED** that this Order shall become effective immediately upon its entry; and it is further

**ORDERED** that this Court shall retain jurisdiction over any and all matters or disputes from or arising from or relating to the implementation of this Order.

Dated: _____

_____
U.S. District Court Judge

**EXHIBIT "C"**

**PROPOSED NOTICE OF PUBLIC AUCTION
OF REAL AND PERSONAL PROPERTY**

**NOTICE OF PUBLIC AUCTION**
**OF REAL AND PERSONAL PROPERTY**

John F. Kennedy, solely in his capacity as the Court-appointed receiver (the "Receiver") in Case No. 5:18-cv-00388-TES, pending in the United States District Court for the Middle District of Georgia (the "Court") hereby posts, pursuant to 28 U.S.C. §§ 2001, 2002 and 2004, this notice of his intention to sell substantially all assets of the New England College of Business and Finance, LLC d/b/a New England College of Business (the "Assets"). Subject to the Sale Procedures approved by the Court by Order dated _____, _____ (the "Order"), these Assets will be sold at public auction (the "Auction") to be held on the 26th day of February, 2019. The Order controls the terms, conditions and procedure of the Auction, and all interested parties must comply with the requirements of the Order in order to participate in the Auction. All sales will be for cash or cash equivalents. All sales will be free and clear of all liens, claims and encumbrances pursuant to the order of the Court, and any final sale is subject to applicable regulatory and accrediting approvals. All sales will be "AS IS" and "WHERE IS" with no representations or warranties of any type except as may otherwise be agreed by the Receiver in his sole and absolute discretion. In accordance with the terms of the Order, the Receiver reserves the right to postpone or adjourn the Auction, to accept any bid or to reject any and all bids that it deems not to comply with the terms of the Order or to be in the best interests of the receivership estate, or to withdraw any of the assets offered for sale at any time prior to the announcement of the completion of the Auction. For additional information on the Auction or the Assets, including further descriptions of the real and personal property to be sold, and to obtain a copy of the Order, please submit a written request to Carl Marks Advisory Group, LLC, c/o Joseph R. D'Angelo, 900 Third Ave., 33rd Floor, New York, NY 10022, telephone (917) 968-9650, email jdangelo@carlmarks.com.

Dated: _____, 2019.

John F. Kennedy, as Receiver

James F. Banter
JAMES, BATES, BRANNAN, GROOVER LLP
231 Riverside Drive
Macon, Georgia 31201
Phone 478/742-4280
Fax 478/742-8720

To be published in the *Wall Street Journal* and the *Boston Globe* in its issues of _____.