IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISON

| | | |
|---|---|---|
| **VC MACON, GA LLC,** | : | |
| *Plaintiff,* | : | |
| v. | : | CIVIL ACTION NO. 5:18-cv-00388-TES |
| **VIRGINIA COLLEGE LLC,** | : | |
| *Defendant.* | : | |

**RECEIVER'S SECOND REPORT**

COMES NOW, John F. Kennedy, Receiver in the above-styled action pursuant to the *Order Appointing Temporary Receiver and Granting Preliminary Injunction* (Doc. 26, "Appointment Order") filed on November 14, 2018, and hereby files his Second Report pursuant the Appointment Order, respectfully showing the Court as follows:

## I. INTRODUCTION

On November 14, 2018, the Court entered the Appointment Order which appointed John F. Kennedy, Esq. as the receiver (the "Receiver")[1] for Education Corporation of America, Virginia College, LLC ("VC"), and New England College of Business and Finance, LLC ("NECB," together with Education Corporation of America and VC, "ECA"), with respect to all the business, business interests, and property of ECA (the "Receivership Property"). The Appointment Order authorized the Receiver to: take immediate possession of the Receivership Property and to have the full power to exercise the usual and customary powers afforded to a receiver; operate ECA's business with a primary focus on financing of the business and other restructuring or sale transactions, custody, and control of all assets of ECA; engage and employ

[1] Receiver may refer to Mr. Kennedy or a member of his receivership team.

persons to assist him in fulfilling his duties; acquire and retain all rights to operate and maintain ECA; to assert any rights, claims, or causes of action on behalf of ECA; pay from ECA's assets any costs incurred from instituting or defending any action; have all the powers of the directors, officers, and managers of ECA; use, sell, or lease the Receivership Property; obtain credit and other financial accommodations for the benefit of the Receivership Property; enforce, disavow, reject, impair, or terminate any contract, agreement, or lease; and, take any further action as the Court deemed equitable. Doc. 26, pp. 4-7.

The Appointment Order required the Receiver to report to this Court and the parties information regarding and describing the Receivership Property within sixty (60) days after the entry of the Appointment Order. Doc. 26, p. 7. On December 12, 2018, however, the Receiver filed an initial report (Doc. 99, the "Initial Report") due to the significant hardships and substantial changes ECA had experienced since the Receiver's initial appointment. Although the Initial Report was filed within the first thirty days of the Receiver's appointment, this Second Report is properly filed within sixty (60) days after the Appointment Order.

## II. DISCUSSION

1. Turnover of Property

On December 13, 2018, the Court entered a Supplemental Order (Doc. 104) that stated "[t]he Receiver shall be deemed to have rejected, repudiated and/or disavowed [. . .] the lease or other occupancy agreement as to each location [. . . ]" as set forth on the evacuation schedule the Receiver submitted in the Initial Report. Doc. 104, p. 2. The Receiver was instructed to turn over possession of each demised premises as of the date of each rejection. *Id.*

The Supplemental Order also included instructions regarding the remaining personalty within the premises. Doc. 104, p. 3. The Supplemental Order precluded landlords from

disposing of any personalty remaining in their premises for five business days following the effective date of the Receiver's rejection of the respective leases. *Id.* Upon the conclusion of the five days, all personalty may be disposed of without being in violation of the injunction of the Receiver Order. *Id.* The Supplemental Order, however, did not,

> impair or otherwise modify any existing claims, liens, security interests, encumbrances rights or interests in the Remaining Personalty including, without limitation (a) any interests in Remaining Personalty held by a third party lessor pursuant to a valid personalty lease agreement, and (b) all security interests and liens in such Remaining Personalty granted to Monroe Capital Management Advisors, LLC ("Monroe")[. . . .]

Doc. 104, p. 3.

In compliance with the Supplemental Order, the Receiver has successfully rejected and vacated all of the premises. ECA has turned over possession of each demised premises to each landlord. In a limited number of circumstances, extensions regarding ECA's respective evacuation dates were requested and granted from individual landlords to allow additional time for ECA to properly dispose of or retain ECA's sensitive documents. ECA has engaged with third-party vendors to retrieve and store these documents. Furthermore, the Receiver is aware that Monroe, pursuant to the terms contained in the Supplemental Order, is actively working with landlords to take possession of, sell, and/or liquidate any Remaining Personalty. *See* Supplemental Order, pp. 2-3.

2. <u>Disbursements, Cash Flow, and Cash Flow Forecast</u>

The Receiver has approved certain disbursements since the filing of the Receiver's Initial Report. From December 10, 2018 through January 7, 2019, the Receiver has authorized $9,888,775.00 in approved requested disbursements. These disbursements are broken down into three categories: payables, student stipends, and payroll. The approved payables consisted of benefit premiums, rent payments for the two remaining ECA facilities, fees for the restructuring

professionals, and other expenses. The requested disbursements were calculated by ECA's financial and accounting departments, and then reviewed by the Receiver's financial professionals before being approved. Attached to the Second Report as "Exhibit A" is the Requested Disbursements Authorization.

Attached to the Second Report as "Exhibit B" is a Revised Cash Flow Projection. This seventeen-week projection illustrates the funds available to continue funding and operating NECB, in addition to other ordinary wind-down expenses. According to the cash-flow forecast, ECA is projected to have a positive ending cash balance at the conclusion of the seventeen weeks. This positive ending cash balance is contingent on several factors, including but not limited to, the time period for a successful sale process for NECB as detailed in the Motion to Approve Sale Procedures (Doc. 127, "Sales Procedure Motion"), and the Department of Education (the "Department") approving Title IV funds for NECB.

The Department has requested from ECA certain documents before approving the requested Title IV funds for NECB. ECA is currently working with the Department to provide those documents, and has engaged with, per the Department's request, third-party auditors to review the documents that will be and have been submitted. Per the Receiver's discussions with the Department, it is expected that document auditing process should be completed in the next few weeks and that the Department's disbursement of Title IV funds should be approved in mid-to-late February.

3. NECB Sale Process

The Receiver has actively been working to establish a sale process regarding NECB. As the Court is aware, on January 11, 2019, the Receiver filed the Sales Procedure Motion regarding

NECB. The Sales Procedure Motion was filed pursuant to 28 U.S.C. §§ 2001, 2002, and 2004 and Rule 66 of the Federal Rule of Civil Procedure, to move the Court to enter an order:

> (1) to sell substantially all assets of and/or ECA's equity interests in NECB (the "Sale Assets") other than in the ordinary course of business, free and clear of liens, claims, encumbrances and other interests, (2) establishing and approving sale procedures (the "Sale Procedures") for the sale of the Sale Assets (the "Sale"), and (3) for related relief (this "Motion").

Doc. 127, p. 1. The Court has granted the Sale Procedures Motion, in part only, scheduling a "Sale Procedures Hearing for Tuesday, January 22, 2019 at 10:00 a.m." Doc. 128.

As detailed in the Sales Procedure Motion, upon the Court's approval, the Receiver will implement certain sale procedures regarding the sale of NECB. Pursuant to applicable controlling federal statutes, the sale of NECB will be conducted by auction. Doc. 127, p. 7; 28 U.S.C. §§ 2001, 2002 and 2004. To participate in the auction process, each interested party must first be determined to be qualified pursuant to the terms set forth in the sale procedures. Doc. 127, pp. 13-17. Upon the Court's approval, the auction will be held on February 26, 2019, at James, Bates, Brannan, Groover LLP, 231 Riverside Drive, Macon, Georgia 31201, but may be continued from time to time at the Receiver's discretion. *Id.* Following a successful auction, the Receiver will return to the Court requesting a hearing for the Court to approve the sale, followed by the Receiver submitting the confirmed sale to NECB's accrediting bodies for final approval. The Receiver expects that the sale of NECB will be closed between mid-May and mid-June. A complete and exhaustive description of the sale procedures was included in the Sales Procedure Motion.

## II. RECOMMENDATION

It is the Receiver's recommendation that ECA continue to remain in federal receivership. As noted above, the Receiver continues to wind-down ECA while actively

working, pursuant to the Court's approval, to sell NECB. Due to the importance of a successful sell of NECB to all interested parties, including all creditors, the Receiver has not filed a motion to establish a claims process to date. The Receiver anticipates seeking the Court's direction in establishing a claims process as detailed in the Receiver's Initial Report.

For these reasons, the Receiver recommends that the best course of action would be to allow ECA to remain in receivership and for the Court to grant the Sale Procedures Motion.

Respectfully submitted this 14th day of January, 2019.

James F. Banter

JOHN F. KENNEDY
Georgia Bar No. 414830
JAMES F. BANTER
Georgia Bar No. 581797
Counsel to John F. Kennedy, Receiver

JAMES-BATES-BRANNAN-GROOVER-LLP
231 Riverside Drive
P. O. Box 4283
Macon, Georgia 31208-4283
(478) 742-4280 telephone
(478) 742-8720 facsimile
jkennedy@jamesbatesllp.com
jnichols@jamesbatesllp.com
jbanter@jamesbatesllp.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on January 14, 2018, a true and exact copy of the foregoing document has been served on the counsel to the parties by way of filing on CM/ECF.

This 14th day of January, 2019.

James F. Banter

JAMES F. BANTER
Georgia Bar No. 581797
Counsel to John F. Kennedy, Receiver

JAMES-BATES-BRANNAN-GROOVER-LLP
231 Riverside Drive
P. O. Box 4283
Macon, Georgia 31208-4283
jbanter@jamesbatesllp.com

# Education Corporation of America
## Requested Disbursements Authorization
From 12/10/18 to 01/07/19

| Total Payments | Paid |
|---|---|
| Payables | $ 1,085,677 |
| Student Stipends | $ 100,998 |
| Payroll | $ 8,702,100 |
| *Total Authorized Payment* | $ 9,888,775 |

| PAYABLES CATEGORY | TOTAL PAID |
|---|---|
| BENEFITS - PREMIUMS | $ 298,461 |
| FACILITIES - RENT | $ 166,247 |
| RESTRUCURING PROFESSIONAL FEES | $ 275,886 |
| OTHER EXPENSES | $ 345,082 |
| Grand Total | $ 1,085,677 |



# Education Corporation of America

## Weekly Cash Forecast

*($ in 000's)*

| Week # | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 1/11 | 1/18 | 1/25 | 2/1 | 2/8 | 2/15 | 2/22 | 3/1 | 3/8 | 3/15 | 3/22 | 3/29 | 4/5 | 4/12 | 4/19 | 4/26 | 5/3 | Total |
| **RECEIPTS** | | | | | | | | | | | | | | | | | | |
| Title IV | $ - | $ - | $ - | $ - | $ - | $ 1,800 | | | | | | | | | | | | $ 1,800 |
| R2T4's | | | | | | | | | | | | | | | | | | $ - |
| Non Title IV | | | | | | | | | | | | | | | | | | $ - |
| Student Payments | | | | | | | | | | | | | | | | | | $ - |
| Other/Ins | | 62 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $ 62 |
| TOTAL RECEIPTS | - | 62 | - | - | - | 1,800 | - | - | - | - | - | - | - | - | - | - | - | 1,862 |
| **DISBURSEMENTS** | | | | | | | | | | | | | | | | | | |
| Student Stipends | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $ - |
| Payroll | - | - | - | - | | | | | | | | | | | | | | $ - |
| Vacation | | - | - | - | | | | | | | | | | | | | | $ - |
| Utilities | (10) | - | - | (15) | | | | (15) | | | | | | | | | | $ (40) |
| Healthcare Benefits | (168) | (134) | (101) | (76) | (57) | (43) | (32) | (24) | (492) | - | | | | | | | | $ (1,126) |
| Rent | - | - | - | - | | | | | | | | | | | | | | $ - |
| Marketing | - | - | - | - | | | | | | | | | | | | | | $ - |
| Textbooks | - | - | - | - | | | | | | | | | | | | | | $ - |
| Accounts Payable | - | - | (210) | - | | | | | | | | | | | | | | $ (210) |
| Credit Card | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $ - |
| CapEx | | | | | | | | | | | | | | | | | | $ - |
| Other | (34) | (34) | (34) | (39) | (29) | (27) | (58) | (17) | (30) | (15) | (21) | (14) | (23) | (12) | (49) | (38) | (27) | $ (500) |
| Total Operating Expenses | (212) | (168) | (345) | (130) | (86) | (70) | (89) | (56) | (522) | (15) | (21) | (14) | (23) | (12) | (49) | (38) | (27) | (1,876) |
| **Operating Cash Flow** | (212) | (106) | (345) | (130) | (86) | 1,730 | (89) | (56) | (522) | (15) | (21) | (14) | (23) | (12) | (49) | (38) | (27) | (14) |
| **Cumulative Operating Cash Flow** | (212) | (318) | (663) | (793) | (879) | 852 | 762 | 706 | 184 | 169 | 149 | 135 | 112 | 100 | 51 | 14 | (14) | |
| Non-Operating (Income) Expenses | | | | | | | | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | | | | | | | | $ - |
| Other Non-Operating | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $ - |
| Total Non-Operating (Income) Expenses | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Debt Service | | | | | | | | | | | | | | | | | | |
| Revolver Borrowing | | | | | | | | | | | | | | | | | | $ - |
| Revolver Repayment | | | | | | | | | | | | | | | | | | $ - |
| Debt service - Principal | | | | | | | | | | | | | | | | | | $ - |
| Debt service - Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | $ - |
| Total Debt Payments | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL DISBURSEMENTS** | (212) | (168) | (345) | (130) | (86) | (70) | (89) | (56) | (522) | (15) | (21) | (14) | (23) | (12) | (49) | (38) | (27) | (1,876) |
| **Restructure Cash Utilization** | | | | | | | | | | | | | | | | | | |
| Professional Fees | (253) | (419) | (49) | (149) | (24) | (344) | (10) | (280) | (10) | (154) | (234) | (25) | - | (120) | (25) | - | - | $ (2,096) |
| Hilco Fees | | | | | | | | | | | | | | | | | | $ - |
| Wind Down P/R Expenses | (145) | (73) | (73) | (84) | (62) | (58) | (123) | (37) | (64) | (31) | (44) | (29) | (50) | (25) | (104) | (8) | (58) | $ (1,066) |
| D&O Tail coverage | | | | | | | | | | | | | | | | | | $ - |
| Retention Bonus | - | | | | | | - | - | | | | | | | | | | $ - |
| NECB Transition Services | | (59) | (57) | (54) | (53) | | | | | | | | | | | | | $ (223) |
| NECB Working Capital | (257) | (257) | (257) | (257) | (257) | (232) | | | | | | | | | | | | $ (1,516) |
| Accounts Payable | | | | | | | | | | | | | | | | | | $ - |
| Committed Payables | | | | | | | | | | | | | | | | | | $ - |
| **Total Restructure Cash Utilization** | (655) | (807) | (435) | (543) | (396) | (634) | (133) | (317) | (74) | (185) | (278) | (54) | (50) | (145) | (129) | (8) | (58) | (4,901) |
| **Beginning Cash Balance** | 5,272 | 4,405 | 3,491 | 2,711 | 2,038 | 1,556 | 2,653 | 2,430 | 2,057 | 1,461 | 1,261 | 962 | 895 | 822 | 666 | 488 | 442 | 5,272 |
| **Plus/Minus Net Cash Flow** | (867) | (914) | (780) | (673) | (481) | 1,096 | (222) | (373) | (597) | (200) | (298) | (67) | (73) | (156) | (178) | (45) | (85) | (4,915) |
| **Ending Cash Balance** | $ 4,405 | $ 3,491 | $ 2,711 | $ 2,038 | $ 1,556 | $ 2,653 | $ 2,430 | $ 2,057 | $ 1,461 | $ 1,261 | $ 962 | $ 895 | $ 822 | $ 666 | $ 488 | $ 442 | $ 357 | $ 357 |

