IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| VC MACON GA, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 5:18-cv-00388-TES |
| VIRGINIA COLLEGE, LLC; and | ) | |
| EDUCATION CORPORATION OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

**RESPONSE TO CONSOLIDATED MOTIONS TO VACATE**

Defendants Virginia College, LLC and Education Corporation of America (collectively, "ECA"), hereby submit this Response (the "Response") to the *Motion of National Retail Properties, LP, Valley Plaza Mall, LP, Chula Vista Center, LLC, and Pierre Bossier Anchor Acquisition, LLC to Vacate the Injunction and Receivership Order or, in the Alternative, to Modify the Scope of the Receivership Order and Injunction* (the "NRP Motion") and the *Motion of Third Parties Thomas D. Gordon and Thomas P. Gallagher, as Co-Trustees of the Don Levin Trust Dated August 30, 1991, as Amended, to Vacate Preliminary Injunction and Receivership Order* (the "Don Levin Trust Motion" and together with the NRP Motion, the "Motions"). In support thereof, ECA states as follows:

04697333.6

## INTRODUCTION

On November 14, 2018, the Court entered the Receivership Order (as defined below), appointing John F. Kennedy (the "Receiver") as Receiver over the assets of ECA for the purposes of preventing irreparable harm to ECA's institutions, which were in danger of being abruptly shut down by landlords including VC Macon, GA, LLC ("VC Macon"). The appointment of the Receiver was necessary to prevent the interruption of the educational missions of ECA's institutions and its thousands of students. The Movants (as defined below) have petitioned the Court to vacate the Receivership Order or, in the alternative, to vacate the preliminary injunction therein. For the reasons explained below, the Movants' arguments are misguided. Indeed, the Court has already lifted the injunction, ordered all property of the landlords returned, and specifically ordered that all landlords (including Movants) are free to pursue any right or remedy regarding the return or protection of their property available under the law. Thus, the instant Motions are moot. Notwithstanding their mootness, were the Court to consider the Motions, they nonetheless fail as Movants' arguments are misplaced and their cited authority is easily distinguishable from the facts at hand. Thus, the Court should dismiss the Motions and leave the Receivership Order fully intact.

## BACKGROUND

1.     On November 6, 2018, ECA filed its *Emergency Motion for the Appointment of a Receiver and Entry of a Temporary Restraining Order and Preliminary Injunction* (the "Receiver Motion"), wherein ECA sought the appointment of a receiver over its assets. (*See* Doc. 10.)

2.     On November 7, 2018, the Court entered the *Order Granting Temporary Injunctive Relief* (the "TRO"), which stayed any actions by landlord parties against ECA. (Doc. 13, p. 3.)

3.     On November 14, 2018, the Court entered the *Order Appointing Receiver and Preliminary Injunction* (the "Receivership Order"), under which John F. Kennedy was appointed Receiver over the receivership estate (the "Receivership Estate"). (*See* Doc. 26.)

4.     On November 16, 2018, the Court entered the *Administrative Order Concerning Pro Hac Vice Admission* (the "Administrative Order"), under which the Court advised that interested parties would not be required "to file a formal motion to intervene and become a formal party to the case" but could "simply file a notice of appearance indicating . . . the nature of the interest." (Doc. 31.)

5.     On November 30, 2018, non-parties National Retail Properties, LP; Valley Plaza Mall, LP; Chula Vista Center, LLC; and Pierre Bossier Anchor

Acquisition, LLC (collectively, the "NRP Movants"), each of which is a landlord to one of the ECA institutions, filed the NRP Motion. (*See* Doc. 45.)

6. On December 4, 2018, non-parties Thomas D. Gordon and Thomas P. Gallagher, as Co-Trustees of the Don Levin Trust Dated August 30, 1991, as amended (the "Don Levin Trust Movants" and with the NRP Movants, the "Movants") filed the Don Levin Trust Motion. (*See* Doc. 62.)

7. Based on the Receivership Order, ECA was to continue to operate, through the Receiver, by implementing a restructuring plan that would allow twenty-six campuses to achieve a teach-out and orderly closure and allow another forty-five campuses to continue to operate in anticipation of a sale ("Restructuring Plan"). (Doc. 99, pp. 2-3.)

8. As detailed in the Initial Report, the Restructuring Plan became no longer viable through a series of unforeseen and uncontrollable events, including the United States Department of Education's decision to place ECA's institutions on Heightened Cash Monitoring Level 2, the withdrawal of additional funding by a previously committed investor, and the withdrawal of ECA's accreditation by the Accrediting Council for Independent Colleges and Schools. (*Id.* at pp. 5-10.)

9. On December 5, 2018, the Receiver directed the wind-down of ECA's operations. The Receiver implemented an expedited teach-out process that allowed a rolling closing of campuses as the current instructional terms were completed.

4

(*Id.* at 10-11.)[1]

10. Thereafter, on December 13, 2018, the Court entered a *Supplemental Order* that directed ECA to teach out the current terms at each campus and then to return the property at the discontinued campuses to the landlords (the "Supplemental Order"). (Doc. 104, pp. 2.)

11. The Supplemental Order specifically lifted the injunction as to the landlords:

> The injunction of the Receiver Order is hereby lifted as to each landlord of each location as to any right to exercise its rights and remedies under such lease, including without limitation any applicable right and/or remedy available under state law, taking possession of the premises and terminating the lease, effective as of such date of rejection, but in no case shall the injunction remain in place following 11:59 p.m., local time on December 22, 2018.

(Doc. 104, p. 2.)

## ARGUMENT

### I. The Motions Are Moot and Movants Lack an Interest in the Outcome

As an initial matter, the Motions are now moot in light of the Court's Supplemental Order whereby the Court rescinded its own injunction. In general, "a case is moot when the issues presented are no longer live or the parties lack a

---

[1] Although the bulk of ECA's operations have ceased, the Receiver remains in control of New England College of Business and Finance, LLC ("NECB"), the last remaining ECA institution that continues to operate. As the Court is aware, the Receiver has been diligently working to effectuate a sale of NECB so as not to displace its students or disrupt the operations of that school. Thus, ECA remains in federal receivership so that the Receiver may continue to wind-down ECA while actively working to sell NECB. (Doc. 130, pp. 4-6.)

5

legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 23 L. Ed. 2d 491, 89 S. Ct. 1944 (1969) (internal quotation marks omitted)).

On December 13, 2018, the Court ordered all leased property be surrendered and that all leases be deemed rejected, repudiated and/or disavowed by ECA and/or its subsidiary lessees. (Doc. 104, p. 2.) On January 14, 2019, in his Second Report, the Receiver confirmed that ECA had turned over possession of each demised premises to each landlord. (Doc. 130, p. 3.) Thus, Movants have their property and are free to pursue whatever actions they want. (*See* Doc. 104, p. 2 ("The injunction of the Receiver Order is hereby lifted as to each landlord of each location as to any right to exercise its rights and remedies under such lease, including without limitation any applicable right and/or remedy available under state law, taking possession of the premises and terminating the lease . . . .").) As such, the Motions are moot. *See, e.g.*, *Leedom Management Group, Inc. v. Perlmutter*, 532 Fed. Appx. 893, 894 (11th Cir. 2013) ("Since the injunction has expired, and, therefore, we no longer can grant the parties any effective relief, this appeal is moot."); *see also Estate of Cochran by and through Pevarnek v. Marshall*, No. 8:17-cv-1700, 2018 WL 2688784, at *2 (M.D. Fla. April 19, 2018) (finding a motion to vacate a temporary restraining order moot when the subject order had already expired).

When the Court lifted the injunction and ordered all leased property returned, and after Movants regained possession of their premises, any interest Movants had in this litigation ceased. Indeed, if the Court were to grant the Motions, Movants would be in no different a position than they are today. *See Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998) ("A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief."). For these reasons, the Motions are due to be denied as moot.

## II. The Court Has the Authority to Appoint a Receiver at the Request of ECA.

Notwithstanding the foregoing, if the Court were to consider the Motions, they should nonetheless be denied. The NRP Movants contend that the Court is without authority to appoint a receiver at the request of ECA. (*See* Doc. 45-1, pp. 11-13.) This assertion is in contravention to the general principle that a court is afforded broad equitable powers in a federal receivership to fashion any equitable relief necessary. *See Sec. and Exch. Comm'n v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) ("[A] district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of a receivership is extremely broad."). Because most receiverships such as the receivership at bar involve "multiple parties and complex transactions," the Court must be afforded wide discretion in administering the receivership. *Id.* Given this broad authority,

the Court was well within its power to appoint a receiver at ECA's request for the purpose of winding down ECA's affairs and allowing students to continue their education without interruption.

The cases cited by the NRP Movants are distinguishable and do not support their contention that the Court may not appoint a receiver at ECA's request. Importantly, the cases relied upon by the NRP Movants are factually dissimilar. In *Bank of Soperton v. Empire Realty Trust Co.*, a company's stockholders and directors passed resolutions stating that the company's business would cease and it would seek the appointment of a receiver. 82 S.E. 464, 464-65 (Ga. 1914). The directors themselves then filed suit against the company seeking the appointment of a receiver. *Id*. at 465. The company filed an answer in which it joined in the directors' request for the appointment of a receiver. *Id*. In the petition for the appointment of a receiver, the directors alleged that the company was solvent and that a sale by certain judgment creditors would "entail great loss[.]" *Id*. Similarly, in *Steele Lumber Co. v. Laurens Lumber Co.*, a company's stockholders filed an action against the company itself seeking the appointment of a receiver. 24 S.E. 755, 758 (Ga. 1896). Finally, in *Bartlett v. Taylor*, the directors of a solvent bank sought the appointment of a receiver "to prevent a run [on the bank.]" 98 S.E. 491 (Ga. 1919).

The facts of the cases cited by the NRP Movants are so clearly dissimilar to the case at bar that they should be disregarded by the Court. Unlike the cases cited by the NRP Movants in which directors and/or stockholders initiated suit against the debtor entity itself, the case at bar was initiated against ECA by a landlord, VC Macon, arising out of alleged defaults. Furthermore, unlike in *Bank of Soperton* and *Bartlett*, ECA is admittedly insolvent and sought the appointment of a receiver to "allow [its] students to pursue their educational plans without undue interruption and also preserve assets and maximize any potential return to ECA's creditors" through the wind-down and liquidation of ECA's assets. (*See* Doc. 10, p. 2.) Furthermore, unlike in *Bank of Soperton* in which a sale was not contemplated by the debtor, a sale of ECA's assets is specifically contemplated in the Receivership Order. (*See* Doc. 26, p. 6.) The receivership in this case is unlike the examples cited by the Movants where a receivership served the interests of directors and stockholders of the affected entities. Rather, this receivership equitably serves and has served the interest of students, creditors, all those interested in the liquidation of ECA.

Other than the cases distinguished above, the NRP Movants are unable to cite to any case law supporting the notion that the Court is unable to appoint a receiver over ECA's assets at ECA's request. In addition, the NRP Movants take from the cases distinguished above an overbroad principle (i.e., that a debtor party

may not seek the appointment of a receiver) that it seeks to apply in all situations, despite the factual dissimilarities and the unique considerations a court must make when determining whether to appoint a receiver in a particular situation. Furthermore, this assertion does not comport with the Court's broad equitable powers to fashion relief, including the appointment of a receiver over ECA's assets to ensure its students' educations are not abruptly ended and to facilitate the wind-down of ECA's operations. *United States v. Bartle*, 159 Fed. Appx. 723, 725 (7th Cir. 2005) ("Federal courts may appoint a receiver to manage a defendant's assets during litigation[.]").

### III. The Movants' Reliance on *Pusey & Jones Co. v. Hanssen* Is Misguided.

In the NRP Motion, the NRP Movants assert that "even if VC Macon had been the one to ask for the appointment of a receiver in this case (which it was not)," the Court would still not have had the authority to appoint such a receiver. (*See* Doc. 45-1, p. 13.) In support thereof, the NRP Movants cite to *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491 (1923), which held that a receiver could not be appointed on the request of an unsecured contract creditor. However, this argument has no application to the case at bar because there is no unsecured contract creditor seeking the appointment of a receiver. Therefore, *Pusey & Jones* is not relevant to this case. Nonetheless, addressing the merits of this argument, the NRP Movants unreasonably expand the narrow holding of this case. There are a countless number

of decisions invoking diversity jurisdiction in which a receiver was appointed that do not conform to the particular circumstances of this case. For example, in an Eleventh Circuit case, the court affirmed the appointment of a receiver over the assets of a debtor after a creditor brought suit in federal court to foreclose its security interest. *Nat'l P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289 (11th Cir. 1998).[2]

## IV.   The Court Has Nationwide Jurisdiction over the Receivership Estate.

In the Motions, the Movants argue the Receivership Order was improper because the Court lacks personal jurisdiction over the Movants. (*See* Doc. 45-1, pp. 18-20; Doc. 62-1, pp. 12-15.) However, federal receivership statutes confer nationwide jurisdiction on the Court for the purposes of this receivership proceeding, regardless of the personal jurisdiction over any interested parties in the receivership estate. 28 U.S.C. § 754 states:

> A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

28 U.S.C. § 754. Additionally, 28 U.S.C. § 1692 states:

---

[2] Likewise, another school was recently placed into receivership in the Northern District of Ohio upon the motion of the plaintiff in that case, a vendor to the school. (*See* Order Appointing Receiver, *Digital Media Solutions, LLC v. South University of Ohio, LLC, et al.*, Case No. 1:19-cv-145, Northern District of Ohio, attached hereto as Exhibit 1.)

> In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.

28 U.S.C. § 1692 (collectively, with 28 U.S.C. § 754, the "Receivership Statutes").

Taken together, the Receivership Statutes vest nationwide jurisdiction on the Court over the Receivership Estate. *In re First Farmers Fin. Lit.*, 2017 WL 85442, at *3 (N.D. Ill. Jan. 10, 2017) ("Thus, as a number of courts have held, Rule 4 [of the Federal Rules of Civil Procedure] and the [Receivership Statutes] vest a district court with *in personam* jurisdiction over one who holds receivership assets in a remote district, and the minimum contacts analysis of *International Shoe* as a limitation on extraterritorial power, does not apply, since service of process under § 1692 [is nationwide]."); *Sec. and Exch. Comm'n v. Bilzerian*, 378 F.3d 1100, 1103-06 (D.C. Cir. 2004). Therefore, the Movants' arguments that the Court lacks personal jurisdiction over the Movants in this receivership action are ineffectual due to the nationwide jurisdiction granted by the Receivership Statutes on the Court. This grant of nationwide jurisdiction over the Receivership Estate's property is necessary to ensure that the Court and the Receiver can effectively manage the Receivership Estate.

The Movants also incorrectly allege that their due process rights have been violated by the Receivership Order. (*See* Doc. 45-1, p. 18; Doc. 62-1, pp. 16-17.)

12

In an emergency situation such as the one facing ECA at the time the hearing was held for the purposes of appointing a receiver, certain protections of due process are necessarily disregarded to protect property at risk of imminent and permanent harm. Furthermore, objecting parties such as the Movants have the opportunity to take part in shaping the Receivership Order once given notice, thus satisfying the due process requirements of notice and an opportunity to be heard.

**V.     The Nationwide Scope of the Receivership Order Is Not Too Broad.**

In the NRP Motion, NRP contends that the Receivership Order should be vacated because its scope is overbroad to the extent it confers to the Court and the Receiver authority over property that is not subject to the case at bar. (*See* Doc. 45-1, pp. 16-17.) However, this contention is incorrect because the Receivership Statutes, as defined and explained above, confer nationwide jurisdiction on the Court for the purposes of administering the receivership. Furthermore, the cases cited by NRP in support of its contention that the Receivership Estate should only consists of the property at issue in the case at bar involve mortgage foreclosure actions in which a receiver was appointed *pendite lite* for the purposes of protecting collateral from waste. *See Smith v. McCullough*, 104 U.S. 25 (1881); *Scot v. Farmers' Loan & Trust Co.*, 69 F. 17 (8th Cir. 1895). The nationwide scope of the Receivership Estate was necessary in this case to protect ECA's assets and

to allow the teach-out of certain schools and to avoid a sudden disruption in students' education.

## VI. The Receiver Appointment Is in Support of a Substantive Claim.

The Don Levin Trust Movants suggest that the Receiver should not have been appointed because his appointment was not in furtherance of a claim by ECA. (*See* Doc. 62-1, pp. 17-18.) Although ECA has not asserted a counterclaim in this action, ECA has asserted the affirmative equitable defense of hardship. (*See* Doc. 8, p. 10.) This defense, which seeks to delay the dispossession of ECA from the premises leased to it by VC Macon, is, in essence, a plea for relief to which the receivership is an ancillary remedy. In addition, the appointment of a receiver was sought by ECA is a "means to reach [a] legitimate end." *Kelleam v. Maryland Cas. Co. of Baltimore, Md.*, 312 U.S. 377, 381 (1941). The Receiver was sought to "satisfy [ECA's] educational obligations to thousands of students as the Teach-Out Schools, preserve the educational futures of students at the Go-Forward Schools, maximize enterprise value of the Go-Forward Schools, prevent millions of dollars of loss to the [United States] Treasury in the form of discharge obligations (which would be borne by taxpayers), provide significant adequate assurance to numerous landlords, and allow for an orderly transition of Plaintiff's operations through the Restructuring Plan." (*See* Doc. 10, p. 15.) These goals can only be achieved through the appointment of a receiver. *See U.S. Bank Nat'l Ass'n v. Nesbitt*

*Bellevue Prop. LLC*, 866 F.Supp.2d 247, 256 (S.D.N.Y. 2012) (appointing a receiver to effectuate the foreclosure and liquidation of properties spread over six states). Therefore, the appointment of a receiver was necessary to allow ECA to achieve the end goals it seeks to the benefit of itself, its students, its landlords, and the federal government.

### VII. The Receivership Proceeding Is Not a Substitute for Bankruptcy.

The NRP Movants allege that the receivership is improper because it is a mere substitute for filing bankruptcy. (*See* Doc. 45-1, pp. 23-24.) While similarities exist between a receivership proceeding and a filing under the protections of the Bankruptcy Code, the receivership is a separate, equitable remedy that is not constrained by the provisions of the Bankruptcy Code. Importantly, this receivership is not an improper substitute for bankruptcy because bankruptcy is simply not an option for ECA. A bankruptcy filing would immediately and permanently render NECB (ECA's lone remaining Title IV institution) ineligible to participate in federal student aid programs offered under the authority of the Higher Education Act, thereby depriving NECB's students' access to federal grants and loans necessary to pay tuition and fees.

### VIII. The Injunction Should Not Be Vacated.

The preliminary injunction was properly issued under the Court's equitable powers and should not be vacated because the four factors to be considered in the

issuance of a preliminary injunction are present in this case. The NRP Movants argue that "ECA's admission that it has not paid rent that is due is fatal to its argument that its equitable defenses will somehow succeed in this lawsuit[.]" (*See* Doc. 45-1, p. 16.) However, this assertion misses the mark because ECA is seeking equitable relief to avoid the immediate dispossession of itself and its tenant subsidiaries to avoid undue hardship. (*See* Doc. 10, pp. 12-13.) This equitable defense is distinct from the allegations that ECA has failed to pay rent, and there is a significant chance that ECA will be successful on the merits of this defense, as discussed in the Receiver Motion.

The NRP Movants argue that the Anti-Injunction Act and All Writs Act have been violated by the issuance of the preliminary injunction in the Receivership Order. (*See* Doc. 45-1, pp. 23-24.) It is important to note that the Anti-Injunction Act "does 'not preclude injunctions against the institution of state court proceedings, but only bar[s] stays of suits already instituted.'" *Sec. and Exch. Comm'n v. DeYoung*, 850 F.3d 1172, 1180 (10th Cir. 2017) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 484 n.2 (1965)). Therefore, the Court should, at the outset, reject the NRP Movants' argument to the extent it seeks to terminate the preliminary injunction as it relates to enjoining the institution of future state court proceedings.

Furthermore, the preliminary injunction is warranted under the All Writs Act. The All Writs Act states that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The All Writs Act is a codification of the federal courts' traditional, inherent power to protect the jurisdiction they already have, derived from some other source. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004) (citing *Procup v. Strickland*, 792 F.2d 1069, 1074 (11th Cir. 1986)) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."). In granting courts authority to protect their "respective jurisdictions," the All Writs Act allows courts to safeguard not only ongoing proceedings, but potential future proceedings, as well as already issued orders and judgments. *Id.* (citing *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993)) ("In addition, courts hold that despite its express language referring to 'aid . . . of jurisdiction,' the All Writs Act empowers federal courts to issue injunctions to protect or effectuate their judgments.").

"A court may grant a writ under this act whenever it is 'calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it,' and not only when it is 'necessary' in the sense that the court could not otherwise physically discharge its ... duties." *Id.* at 1100 (citing *Adams v. United States*, 317 U.S. 269,

17

273, (1942)) ("Such writs may be directed to not only the immediate parties to a proceeding, but to 'persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and . . . even those who have not taken any affirmative action to hinder justice.'" *Id.* (citing *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977). Therefore, the Court had the authority under the All Writs Act to issue the preliminary injunction.

## CONCLUSION

ECA respectfully requests the Court deny the Movants' request to vacate the Receivership Order and deny the other relief requested in the Motions.

Respectfully submitted this the 4th day of February 2019.

           */s/ Ollie A. Cleveland, III*
           Ollie A. Cleveland, III (admitted *pro hac vice)*
           Alexander B. Feinberg (GA Bar No. 956505)
           **Maynard Cooper & Gale**
           1901 Sixth Avenue North
           Suite 2400, Regions/Harbert Plaza
           Birmingham, Alabama 35203-2618
           T: (205) 254-1000
           F: (205) 254-1999
           E: tcleveland@maynardcooper.com
           E: afeinberg@maynardcooper.com

Walker S. Stewart
**Hall, Bloch, Garland & Meyer, LLP**
577 Mulberry St.
Suite 1500
Macon, Georgia 31201
T: (478) 745-1625
E: walkerstewart@hbgm.com

*Attorneys for Defendants Virginia College, LLC and Education Corporation of America*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system on this the 4th day of February 2019, which will send email notification to all counsel of record.

*/s/ Ollie A. Cleveland, III*
Ollie A. Cleveland, III
