**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

|  |  |  |
|---|---|---|
| VC MACON GA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 5:18-cv-00388-TES |
| v. | ) | |
| | ) | |
| VIRGINIA COLLEGE, LLC, and EDUCATION | ) | |
| CORPORATION OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

**MONROE'S OPPOSITION TO RECEIVER'S
EXPEDITED MOTION FOR AMENDMENT TO COMFORT ORDER**

Before this Court placed it into a receivership, the Education Corporation of America (ECA) purchased multiple insurance policies (the D&O policies) that provide a total of $81 million in coverage to ECA's former directors and officers, and in some instances to ECA itself. That coverage includes $21 million from policies that exist *only* to indemnify the directors and officers, and not ECA.

On March 11, 2020, the Receiver filed a motion, asking this Court to "clarify that the Policies . . . are an asset of and owned by the Receivership Estate." Expedited Mot. for Amendment to Comfort Order 1, ECF No. 355 (Mot.). The Receiver apparently filed this motion in order to establish that the receivership estate has some special entitlement to all of the proceeds of the D&O policies. That is wrong, and the Court should deny the motion.

First, the Receiver is not seeking a mere clarification of a prior order of this Court, but instead is seeking an entirely new ruling about the legal status of the D&O policies and their proceeds. The Receiver has, on two occasions, told this Court that the D&O policies and proceeds are *not* property of the receivership estate – the exact opposite of his position now. The Receiver

1

explained, and the Court held, that the D&O policies here should be handled like any other insurance policies – the insurance company should evaluate and pay any claims according to the policies' terms.  The D&O policies are *not* under the control of the Receiver, and the receivership estate has no special priority to the proceeds under the policies.  The Receiver should be judicially estopped from changing his position now.

Second, as a legal matter, the proceeds of the D&O policies are not property of the receivership estate.  The Receiver's motion refers only to the insurance *policies*, but the Receiver's argument makes clear that he wants the policy *proceeds* to be considered property of the receivership estate, presumably so that the receivership estate gets paid first under the policies.  That is simply wrong as a matter of law.  The insurance policies are contracts that specify who gets paid and in what order.  The Receiver is bound by the terms of those contracts.  He does not have some special right to all of the D&O policy proceeds simply because the entity that purchased the policies (ECA) is in receivership.  Rather, the Receiver stands in the shoes of ECA, and the receivership estate only gets paid if ECA makes a claim under the D&O policies and the insurance company decides that the policies cover the claim.  ECA could never get paid $21 million of the coverage under the policies, because that coverage is only for the directors and officers, and not for ECA.  Further, whether and when ECA would get paid depends on the priority-of-payments provision in the D&O policies.  The policies here provide, in no uncertain terms, that claims against the directors and officers get paid *before* claims against ECA.  The Receiver has the burden of justifying that the policy proceeds are part of the receivership estate, and he has not done so here.

Accordingly, the Court should deny the Receiver's motion.  The Court should hold that the proceeds of the D&O policies are not property of the receivership estate, and that the receivership estate has no special right to obtain the proceeds simply because ECA is in receivership.

## BACKGROUND

### *The Insurance Policies*

There are eight insurance policies at issue (attached as Exhibits A-H), which provide a total of $81 million in D&O coverage.[1]  The primary policy was issued by AIG and provides $10 million in coverage to both the directors and officers and to the company (ECA).  Ex. A at 099 (AIG Policy).  It also includes $1 million in separate excess coverage for the directors and officers only.  *Id.*  Seven additional policies provide an additional $70 million in coverage – $50 million for ECA's directors and officers and ECA, and $20 million for the directors and officers only.  *See, e.g.*, Ex. B at 001 (Starr Insurance Policy); Ex. F at 003 (XL Specialty Policy); Ex. H at 002 (National Union Policy).  The policies specify the order in which payments will be made, with claims against the directors and officers being paid before claims against ECA.  *See, e.g.*, Ex. A at 046, ¶ 10 (AIG Policy).  (The policies are discussed in more detail below.)

### *January 2019 Comfort Order*

In early 2019, ECA faced multiple lawsuits from current and former students and employees.  *See* Receiver's Mot. for Order Clarifying that Court's Inj. Does Not Apply to Ins. Policy ¶ 6 n.2, ECF No. 133 (Jan. 16, 2019) (Mot. for Comfort Order).  One suit also named ECA's CEO as a defendant.  *See* Compl., *Garcia v. Willis Stein & Partners, LLC*, No. 18-cv-621 (E.D. Tex. Dec. 12, 2018), ECF No. 1.  The D&O policies provided coverage to defend those lawsuits.  *See, e.g.*, Ex. A at 009-10, 028 (AIG Policy).  But AIG was unsure whether it could disburse the

---

[1]     *See* Ex. A at 099 (AIG Policy); Ex. B at 001 (Starr Policy); Ex. C at 001 (Argo Group Policy); Ex. D at 007 (Zurich Policy); Ex. E at 003 (Nationwide Policy); Ex. F at 003 (XL Specialty Policy); Ex. G at 005 (Markel Policy); Ex. H at 002 (National Union Policy); *see also* Status Conference Hr'g Tr. 12:15-20, ECF No. 144 (Dec. 12, 2018).

proceeds without violating the receivership order.  Mot. for Comfort Order ¶ 6; *see* Receivership Order 10, ECF No. 26 (Nov. 14, 2018).

The Receiver therefore sought a comfort order from this Court, asking the Court to hold that the "Receivership Order does not apply to AIG's ability to disburse the Policy proceeds in accordance with the language of the Policy."  Mot. for Comfort Order ¶ 7.  In that motion, the Receiver unequivocally stated his view that "[t]he Receivership Entities do *not* consider the [AIG] Policy or the proceeds therefrom property of the Receivership Estate."  *Id*. (emphasis added).  Accordingly, the Receiver explained, AIG could administer the policies and disburse the proceeds just as it normally would with any other insurance policy.  *Id.*  The Receiver cited multiple decisions from the bankruptcy context that supported his position.  Those cases hold that, when an entity is placed under the care of a trustee, proceeds of an insurance policy providing coverage for the entity do not automatically become property of the estate; instead, proceeds are distributed as specified by the policy.  *Id.* ¶ 7 n.3 (citing *Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 787 n.62 (Bankr. M.D. La. 2001), and *In re Mitchell*, Case No. 06-13250-NVA, 2012 WL 5988841, at *6 (Bankr. D. Md. Nov. 29, 2012)).

This Court entered the requested comfort order – the order that the Receiver now seeks to reverse.  The Court held that AIG could pay the legal defense costs of ECA and its CEO, explaining:  "To the extent the [AIG] Policy and the proceeds from the Policy are property of the Receivership Estate, the injunction imposed by the Court in the Receivership Order . . . does not apply to the Policy or the proceeds therefrom."  Comfort Order ¶ 7, ECF No. 141 (Jan. 22, 2019).  The Court did not affirmatively state that the D&O policies or proceeds were property of the receivership estate.  Instead, it said that even if they were, AIG could distribute the policy proceeds, according to the policy's terms, without violating the receivership order.  *Id.* ¶ 9 ("AIG is

4

authorized to disburse proceeds in accordance with the terms and conditions of the Policy, including the payment for any Losses, such as the advancement of legal fees and expenses, stemming from any Claim under the Policy.").  So the Court's order said what the Receiver requested and what everyone expected:  Claims under the AIG policy would be paid according to the terms of the policy.

### *April 2019 Order*

Three months later, the issue resurfaced.  A plaintiff in a class action against ECA asked this Court to clarify that he could pursue his claims against ECA through his lawsuit in the Northern District of Alabama, rather than through the claims process set up by the Receiver.  *See* Mot. for Clarification, ECF No. 186 (Mar. 27, 2019).  In response, the Receiver argued that, to the extent that any student "has a qualifying 'Claim' under the AIG policy" and "strictly seeks the recovery of insurance proceeds available under the AIG Policy," the student may assert that claim through a lawsuit, rather than through the receivership's claims process.  ECA & Receiver's Response to Mot. for Clarification ¶ 9, ECF No. 195 (Apr. 10, 2019) (April 2019 Mot.).  The Receiver explained that this was because the "insurance proceeds are *not* part of the Receivership Estate."  *Id.* ¶ 11 (emphasis added).

In support of his argument, the Receiver relied on this Court's comfort order.  He stated: "The Court has previously made clear that the AIG Policy and the proceeds from that policy are *not* part of the Receivership Estate.  *See* Doc. 141."  April 2019 Mot. ¶ 8 (emphasis added).  The Receiver also reiterated that the insurer pays insurance proceeds in accordance with the policy's terms:  "AIG is authorized to disburse proceeds with the terms and conditions of the [AIG] Policy, including the payment for any Losses . . . stemming from any Claim under the [AIG] Policy."  *Id.* (quoting Court's order).

This Court agreed with the Receiver's arguments.  Order ¶¶ 2-7, ECF No. 197 (Apr. 11, 2019) (April 2019 Order).  The Court held that "students holding or wishing to assert any claim . . . against the Receivership Entities for which the AIG Policy provides coverage . . . may do so independently and separate from the claims process."  *Id.* ¶ 5.  The Court reasoned that "the Receiver and the Receivership Entities consider the AIG Policy and any potential proceeds derived therefrom to be *outside* of the Receivership Estate" and so it is up to AIG "to pay any covered losses outside of the Receivership Estate."  *Id.* ¶¶ 2-3 (emphasis added).

Thus, the Receiver twice took the position that the insurance policies and the proceeds are not part of the receivership estate, and this Court twice agreed.  This Court held that people with claims against the AIG policy may pursue them outside of the claims process, and that the claims will be paid by AIG in accordance with the terms of the policy.

### This Motion

On March 11, 2020, the Receiver filed this motion, asking the Court to "clarify" that "the Polices . . . are an asset of and owned by the Receivership Estate."  Mot. 1.  This is exactly the opposite of the position he has twice taken before this Court.  The Receiver now says that his prior statements – that the policies and proceeds were *not* property of the receivership estate – were "inadvertent[]" and "imprecise."  *Id.* ¶¶ 9-10.  He says that his "intent" was "to make clear the Policies and Claims under the Policies were going to be outside the Claims Process," but that he retains ownership of "all assets," apparently including the policy proceeds.  *Id.* ¶ 10.  He says that because "the Receivership Entities" are the "[i]nsureds under the Policies," and they (or the Receiver) paid the policy premiums, "the Policies are clearly assets of and owned by the Receivership Estate."  *Id.* ¶ 11.

The Receiver asks this Court to enter an order "amending the Comfort O[r]der to clarify that the Policy is the property of and owned by the Receivership Estate," and that the "Policy . . . is outside the Claims Process and any injunction thereunder does not enjoin AIG from paying any Losses, including the advancement of legal fees and expenses, stemming from any Claim under the Policy."  Mot. ¶ 12.

## ARGUMENT

The Receiver and this Court got it right the first time – the proceeds of the D&O policies are not property of the receivership estate.  Instead, the insurers administer the policies according to their terms, outside of the claims process and the receivership estate.  Whether the receivership estate ultimately will receive any of the policy proceeds depends on the terms of the policies (including the priority-of-payments clause) and whether any claims are made against ECA.  At this point, it would be premature to make any decision about who is entitled to policy proceeds, except to say that the policy proceeds are not automatically property of the receivership estate.

## I.    The Receiver Is Not Seeking A Mere Clarification, And He Has Not Provided Any Good Reason For This Court To Reverse Its Prior Orders

### A.    The Court's Prior Orders Recognized That The Insurance Proceeds Are Not Property Of The Receivership Estate

The Receiver is not seeking a mere clarification, and his prior statements were anything but inadvertent.  The Receiver previously argued, and this Court previously held, that the D&O policies and their proceeds are not property of the receivership estate.  Those were not mere stray statements, but were the reasoning behind the Receiver's prior filings and the Court's prior orders.

As noted above, in 2019, the Court was twice asked to decide whether claims against the D&O policies could proceed outside of the claims process.  The Court held that they could, explaining that the insurer could pay those claims like it would any other claim – according to the

7

terms of the policies.  Put another way, the Court recognized that the insurance policy proceeds are not property of the receivership estate and are administered by the insurer outside of the receivership estate.

That is just what the Receiver told this Court.  He explained that, because "[t]he Receivership Entities do not consider the Policy or the proceeds therefrom property of the Receivership Estate," AIG could pay for the defense of lawsuits against ECA and its CEO.  Mot. for Comfort Order ¶ 7 (stating that AIG can "disburse the Policy proceeds in accordance with the language of the Policy").  The Receiver cited several decisions in support of his position, *id.* ¶ 7 n.3 – decisions that are correct.  *See* p. 12, *infra*.  The Receiver took the same position in his April 2019 filing:  He reasoned that because "the AIG Policy and the proceeds from that policy are not part of the Receivership Estate," students may bring lawsuits against ECA, and AIG may pay any resulting claims as specified in the D&O policies.  April 2019 Mot. ¶ 8; *see id.* ¶ 11 (explaining that students do not need to go through the claims process when bringing a claim for which the insurance policies provide coverage "because such insurance proceeds are not part of the Receivership Estate").  The Receiver's representations about whether the D&O policies and proceeds were property of the receivership estate, then, were critical to his arguments and to the conclusion that AIG can pay claims made under the policies in accordance with the policies' terms.

This Court accepted the Receiver's reasoning and entered the requested orders.  *See* Comfort Order ¶¶ 7, 9; April 2019 Order ¶¶ 2-5.  Because the proceeds of the D&O policies are not property of the receivership estate, the Court held that the insurers are responsible for evaluating claims and paying out the policy proceeds.  *See* Comfort Order ¶ 9 ("AIG is authorized to disburse proceeds in accordance with the terms and conditions of the Policy."); April 2019 Order

¶ 3 (repeating and relying on that holding).  The Court expressly cited the Receiver's representation as support for its conclusion.  *See* April 2019 Order ¶ 2.

That holding is common sense.  D&O policies are contracts, and the language of the policies dictates who gets paid and when.  The fact that ECA is now in a receivership does not change that fact.  Both the insureds (who include ECA's former directors and officers) and those with potential claims against them understood that the insurers would distribute insurance proceeds according to the policies' terms.

The Receiver should be judicially estopped from changing his position now, because the Court issued an order based on his representations and other parties have relied on it.  Under the doctrine of judicial estoppel, when "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).  As the Supreme Court has explained, "courts have uniformly recognized that" the judicial estoppel doctrine "protect[s] the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Id*. at 749-50 (internal quotation marks omitted); *see Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285-86 (11th Cir. 2002) (explaining that, although the Eleventh Circuit generally considers two factors – whether the inconsistent positions were taken under oath, and whether the statements were made to undermine the judicial process – "courts must always give due consideration to all of the circumstances of a particular case" when considering the applicability of judicial estoppel), *rev'd on other grounds*, *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1185-86 (11th Cir. 2017).  Here, the Receiver is attempting to change

position based on the mere fact that he has now deemed it advantageous to do so. The judicial estoppel doctrine was designed to prevent litigants from doing precisely that.

At the very least, if the Receiver now wishes for the Court to reverse its prior holding, he must justify that change. He has not done so.

### B.   The Receiver Has Not Provided Any Reason For The Court To Reverse Course

The Receiver makes essentially two arguments. First, he claims that when he stated to the Court in January 2019 that the D&O policies and proceeds were not property of the receivership estate, he meant that "the Policies and Claims under the Policies were going to be outside the Claims Process," but that he retains ownership of "all assets," which apparently includes the policy proceeds. Mot. ¶ 10. The Receiver's explanation does not withstand scrutiny. The Receiver's prior statements are unambiguous – the "insurance proceeds are *not* part of the Receivership Estate." April 2019 Mot. ¶ 11 (emphasis added); *see* Mot. for Comfort Order ¶ 7 ("The Receivership Entities do *not* consider the Policy or the proceeds therefrom property of the Receivership Estate." (emphasis added)). Further, it makes no sense to say that the proceeds of the D&O policies are paid outside the claims process, in accordance with the policies' terms, but that the receivership estate is somehow automatically entitled to all of the proceeds. Who is entitled to proceeds and when depends solely on the language of the D&O policies.

Second, the Receiver claims that the D&O policies are part of the receivership estate because ECA is an insured under the policies, and ECA and the Receiver paid the premiums under the policies. Mot. ¶ 11. But ECA is not the only insured – the policies also separately cover the directors and officers, and the policies specify that claims against the directors and officers must be paid *before* claims against ECA. *See, e.g.*, Ex. A at 046, ¶ 10 (AIG Policy). It is simply wrong to suggest that the person who pays the cost of obtaining the policies is automatically entitled to

the proceeds under them.  *See, e.g.*, *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987).  The policies are contracts negotiated by parties at arm's length.  They specify who will receive the proceeds and under what circumstances.  So neither of the Receiver's arguments gives this Court any reason to revisit and reverse its prior holdings.

## II.     The Insurance Proceeds Are Not Property Of The Receivership Estate

The Receiver seeks an order that (1) "the Policy is the property of and owned by the Receivership Estate" and (2) "the Policy, while part of the Receivership Estate, is outside the Claims Process" so the insurers may "pay[] any Losses . . . stemming from any Claim under the Policy."  Mot. ¶ 12.  This request seems to encompass two different issues – ownership of the policies and ownership of the policy proceeds.  The person who buys the policies owns them.  But the owner does not control how the policies are paid out.  The insurers make that decision, under the terms specified in the policies.

The Receiver has the burden of showing that an asset belongs to the receivership estate. *See, e.g.*, *In re Meyers*, 616 F.3d 626, 629-30 (7th Cir. 2010); *In re Santaella*, 298 B.R. 793, 799 (Bankr. S.D. Fla. 2002); *see also SEC v. Narayan*, No. 3:16-cv-1417-M, 2017 WL 447205, at *4 (N.D. Tex. Feb. 2, 2017).  The Receiver failed to satisfy that burden here.  He did not discuss the D&O policies' terms or any relevant case law, or even submit the D&O policies to the Court.  The policies make clear, on their face, that they do not cover only ECA.  They therefore cannot be deemed an asset of the receivership estate.

### A.     The Receiver And The Receivership Estate Have No Special Rights To The Insurance Proceeds

Here, ECA purchased the D&O policies, so it (and now the receivership estate) owns the policies.  *See La. World Exposition*, 832 F.2d at 1399.  But that does not give the receivership estate any special right to obtain all of the proceeds of those policies.  How claims are paid under

the policies depends on who makes claims against the policies, whether the policies cover those claims, and (if there are multiple claims) what the policies say about priority of payments.

The receivership estate has no greater right to the policies than ECA had prior to the receivership. The law on this is well-settled. *See, e.g.*, *Narayan*, 2017 WL 447205, at *5 ("[A] receiver acquires no greater rights in property than the debtor had." (internal quotation marks omitted)); *In re Downey Fin. Corp.*, 428 B.R. 595, 608 (Bankr. D. Del. 2010) (noting trustee cannot obtain greater rights in policy than debtor had outside of bankruptcy). The Receiver does not suddenly have a right to the policy proceeds just because the entity that owns the policies is in receivership. *See, e.g.*, *La. World Exposition*, 832 F.2d at 1398-1401 (holding proceeds of insurance policy did not belong to the estate and noting distinction between ownership of policies and ownership of proceeds); *In re CHS Elecs. Inc.*, 261 B.R. 538, 541-42 (Bankr. S.D. Fla. 2001) (same); *see also Narayan*, 2017 WL 447205, at *4.

The Receiver himself recognized that in his original motion seeking a comfort order. Mot. for Comfort Order ¶ 7 n.3. The decisions he cited, which arose in the bankruptcy context, hold that when an entity is placed under the care of a trustee, the proceeds of an insurance policy covering the entity are not automatically property of the bankruptcy estate. *See Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 787-801 & n.62 (Bankr. M.D. La. 2001); *In re Mitchell*, Case No. 06-13250-NVA, 2012 WL 5988841, at *6 (Bankr. D. Md. Nov. 29, 2012).

The cases make the common-sense point that the terms of insurance policies themselves govern how policy proceeds are spent. The creation of a bankruptcy estate, or a receivership estate, does not fundamentally change the nature of the insurance policies, so that suddenly the trustee/receiver is entitled to take all of the proceeds. That would impermissibly "re-write the

terms of the insurance contracts so as to create an estate for the [Receiver]." *In re Mitchell*, 2012 WL 5988841, at *6.

**B.      Entitlement To Insurance Proceeds Depends On The Policies' Terms, The Claims Made, And The Priority Of Payment Specified**

Determining who should receive the proceeds of D&O policies involves three steps: (1) analyzing the policies' language; (2) determining who (if anyone) has asserted claims against the policies; and (3) determining the priority of payment for any outstanding claims.

*Policy Language*

The first step is to review the D&O policies' terms, because entitlement to proceeds depends on "the language and scope of the specific policies at issue." *Downey Fin. Corp.*, 428 B.R. at 603. A Receiver's right to any proceeds from a D&O policy is limited "by the contractual provisions within that policy." *In re Youngstown Osteopathic Hosp. Ass'n*, 271 B.R. 544, 550 (Bankr. N.D. Ohio 2002) (internal quotation marks omitted).

In order for the receivership to have any claim to policy proceeds, the policy must provide coverage for the entity placed into the receivership. If a policy provides coverage only to directors and officers, and not the company, then proceeds of the policy cannot be property of the *company's* receivership estate. *See La. World Exposition*, 832 F.2d at 1400; *In re World Health Alternatives, Inc.*, 369 B.R. 805, 810 (Bankr. D. Del. 2007). If a policy provides both individual coverage to the directors and officers and coverage to the company, then the receivership may be able to obtain the policy proceeds – it depends on the coverage and the claims made. The fact that the company in receivership may have some potential interest in the insurance policy's proceeds "does not automatically mean that the entire proceeds become an asset of the Receivership Estate." *Narayan*, 2017 WL 447205, at *5.

13

Applying those principles here:  The eight policies are a primary policy issued by AIG and seven excess insurance policies issued by a variety of insurers.  They are:

(1) $10 million under the AIG primary policy, with a separate $1 million in excess coverage for the directors and officers alone, Ex. A at 099;

(2) $10 million under the Starr policy, Ex. B at 001;

(3) $10 million under the Argo Group policy, Ex. C at 001;

(4) $10 million under the Zurich policy, Ex. D at 007;

(5) $10 million under the Nationwide policy, Ex. E at 003;

(6) $10 million under the XL Specialty Insurance policy, providing coverage to the directors and officers alone, Ex. F at 003;

(7) $10 million under the Markel policy, Ex. G at 005; and

(8) $10 million under the National Union policy, providing coverage to the directors and officers alone, Ex. H at 002.

The AIG policy (the primary policy) includes both Side A and Side B coverage.  Side A provides coverage for the directors and officers, for their activities when the company fails to indemnify them.  Side B provides coverage for the company, for claims against the directors and officers (when the company has indemnified the directors and officers for those claims) and claims against the company itself.  These two types of coverage are specified in the policy language:

COVERAGE A:  INDIVIDUAL INSURED INSURANCE

This D&O Coverage Section shall pay the Loss of an Individual Insured arising from a Claim made against such Individual Insured for any Wrongful Act of such Individual Insured, except when and to the extent that the Company has indemnified such Individual Insured . . .

COVERAGE B:  PRIVATE COMPANY INSURANCE

This D&O Coverage Section shall pay the Loss of the Company arising from a:

(i)      Claim made against the Company; or

(ii)      Claim made against an Individual Insured;

for any Wrongful Act, but, in the case of Coverage B(ii) above, only when and to the extent that the Company has indemnified the Individual Insured for such Loss. . . .

Ex. A at 027 (AIG Policy) (bolding omitted).  The AIG policy also includes a "Side A Excess Limit of Liability," which provides $1 million in excess coverage *only* to the directors and officers, after all other D&O insurance coverage has been exhausted.  Ex. A at 099 (AIG Policy).  Thus, the AIG policy separately insures the directors and officers, apart from ECA – it does not cover only ECA.

Five of the other policies are "following form" policies, which means they include the same Side A and Side B coverage as the AIG policy.[2]  The remaining two policies are "Side A Only" policies issued by XL Specialty Insurance and National Union, which each provide $10 million in coverage only for the directors and officers.  Ex. F at 003 (XL Specialty Policy); Ex. H at 002 (National Union Policy).  So under the policies, $21 million in coverage is available *only* for the directors and officers, and those proceeds cannot be accessed by ECA under any circumstances. Thus, it is wrong to say that all of the D&O policy proceeds automatically belong to the receivership estate as property of ECA.  The plain language of the polices refutes the Receiver's argument.

***Claims***

For the receivership estate to have any entitlement to D&O policy proceeds, the Receiver must demonstrate that there are actual, concrete claims that both trigger coverage and are likely to move forward against the estate.  *See In re DBSI, Inc.*, No. 08-12687 (PJW), 2012 WL 2501090,

---

[2]      *See* Ex. B at 004 (Starr Policy); Ex. C at 003 (Argo Group Policy); Ex. D at 007 (Zurich Policy); Ex. E at 003 (Nationwide Policy); Ex. G at 005 (Markel Policy).

at \*5-\*11 (Bankr. D. Del. June 27, 2012); *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 512-13 (Bankr. D. Del. 2004); *In re First Cent. Fin. Corp.*, 238 B.R. 9, 17-18 (Bankr. E.D.N.Y. 1999); *CHS Elecs.*, 261 B.R. at 542-43.  If ECA has no claims against it that are likely to move forward, it has no hope of being reimbursed by the insurer, and therefore the insurance proceeds cannot be part of the receivership estate.

Although the Receiver makes a passing reference to "[s]everal Claims [that] were made against the Receivership Entities," Mot. ¶ 6, he provides no details on any of those claims, and so one cannot determine whether they might trigger coverage under Side B of the D&O policies. Here, the Receiver has not demonstrated that claims currently exist that will trigger coverage under the policy.[3]  The Receiver therefore has not met his burden to demonstrate that claims against ECA require coverage.  *DBSI, Inc.*, 2012 WL 2501090, at \*5-\*11; *Allied Digital*, 306 B.R. at 512-13; *First Cent. Fin. Corp.*, 238 B.R. at 17-18; *CHS Elecs.*, 261 B.R. at 542-43.

The Receiver may argue that the proceeds should belong to the receivership estate because ECA has potential claims against its directors and officers.  That is wrong.  The Receiver and Monroe both have claims against the directors and officers that could be paid under the Side A coverage of the policies.  The mere fact that the Receiver has a claim to insurance proceeds on behalf of ECA does not transform those proceeds into an asset of the receivership estate.  *See CHS Elecs.*, 261 B.R. at 542-45.  That is especially true because Monroe has a competing claim to the Side A proceeds.  The Receiver has stepped into the shoes of ECA, and ECA has no greater claim

---

[3]    In Texas, students pursued a putative class action on behalf of more than 19,000 potential class members against ECA, its CEO, and a Monroe entity.  The Texas district court rejected that putative class action and ordered the plaintiffs to submit each of their over 19,000 individual claims to individual arbitration proceedings.  *See* Order, *Garcia v. Willis Stein & Partners, LLC*, No. 18-cv-621 (E.D. Tex. Aug. 5, 2019), ECF No. 45.  Those arbitrations have never happened, likely because the plaintiffs' counsel was unwilling or unable to conduct over 19,000 individual arbitrations.

to the policy proceeds than any other claimant (including Monroe).  *Id*.; *Youngstown Osteopathic Hosp. Ass'n*, 271 B.R. at 550; *Narayan*, 2017 WL 447205, at *5.

### *Priority of Payments*

A D&O policy's priority-of-payment clause remains in force during a receivership, just like the policy's other terms.  Thus, even if the D&O policies include coverage for ECA and even if ECA faces actual outstanding claims, ECA is not automatically entitled to the proceeds.  Rather, entitlement to the proceeds depends on the priority-of-payment provision.  *See In re Laminate Kingdom, LLC*, No. 07-10279-BKC-AJC, 2008 WL 1766637, at *1-*3 (Bankr. S.D. Fla. Mar. 13, 2008); *Downey Fin. Corp.*, 428 B.R. at 607-08; *In re MF Global Holdings, Ltd.*, 515 B.R. 193, 203-04 (Bankr. S.D.N.Y 2014).  If that provision states that claims against the directors and officers are paid before claims against the company, then the company's receivership estate has only a "contingent, residual interest in the [p]olicy's proceeds."  *Laminate Kingdom*, 2008 WL 1766637, at *3.

Here, the AIG primary policy contains a priority-of-payments clause that requires the insurer to pay losses for claims made against ECA's officers and directors *before* paying losses for claims made against ECA.  Ex. A at 046, ¶ 10.  Specifically, it provides that all Side A claims (against directors and officers) will be paid before any Side B claims (against ECA itself):

10.    ORDER OF PAYMENTS

In the event of Loss arising from a Claim for which payment is due under the provisions of this D&O Coverage Section, the Insurer shall at the written request of the particular Named Entity:

(a) first pay such Loss for which coverage is provided under Coverage A of this D&O Coverage Section . . .

(b) then . . . pay such other Loss for which coverage is provided under Coverage B(ii) of this D&O Coverage Section [which reimburses the company after it has indemnified an individual insured for a covered loss] . . .

> (c) then . . . pay such Loss for which coverage is provided under Coverage B(i) [which reimburses the company for claims made against it] . . . .

*Id.* (bolding omitted).  This provision is included in all of the other D&O policies that provide coverage to ECA because they are following form policies.  *See, e.g.*, Ex. B at 004 (Starr Insurance Policy) ("The Insurer shall pay the individuals and entities insured under the Followed Policy . . . in accordance with the terms, conditions, limitations and other provisions of the Followed Policy.").

The order of payments specified in the policies does not change because ECA is in a receivership.  The AIG policy specifically provides that ECA's financial insolvency "shall not relieve the Insurer of any of its obligations to prioritize payment of covered Loss under this D&O Coverage Section pursuant to this Clause 10."  Ex. A at 046, ¶ 10 (bolding omitted).  The AIG policy also expressly states that the fact that ECA is in a receivership does not alter this order of payments.  In fact, the policy expressly bars ECA (and therefore the Receiver) from challenging this priority of payments if ECA is in a receivership:  "[If] a . . . receivership . . . is commenced by a Company (whether voluntarily or involuntarily)," then the "Insureds . . . (a) waive and release any . . . injunction to the extent it may apply in such proceeding to the proceeds of this Policy" and "(b) agree not to oppose or object to any efforts by the Insurer or any Insured to obtain relief from any . . . injunction to the extent applicable to the proceeds of this Policy."  Ex. A at 046, ¶ 10. ECA is an "[i]nsured" under the policy, *id.* at 027, 030, so the policy bars ECA (and therefore the Receiver) from arguing that the receivership order gives the receivership estate any greater rights to the insurance proceeds than the policy itself.  In other words, ECA already has waived any right

it theoretically may have had to challenge the distribution of the D&O policy proceeds once ECA was placed in a receivership.[4]

Courts routinely enforce priority-of-payment provisions like the one here.  In *In re Downey Financial Corp.*, 428 B.R. 595 (Bankr. D. Del. 2010), a bankruptcy court interpreted a priority-of-payment provision that, as here, required the insurer to pay Side A claims before Side B claims.  *Id.* at 607-08.  The court rejected the argument that the policy proceeds were property of the bankruptcy estate, explaining that the trustee cannot have greater rights to the policy proceeds than the debtor had before it declared bankruptcy.  *Id*.  The same is true in this case:  The Receiver has only the same rights that ECA had to policy proceeds before the receivership.  And the policy language makes clear that, even in receivership proceedings, the parties intended not to upset the priority of payments specified in the policies.

Accordingly, it would be wrong, as a matter of law, to hold that all D&O policy proceeds are the property of the receivership estate.  And it would be premature to say anything more about the policy proceeds, because there are no outstanding claims against ECA that need to be paid at this point.

* * * * *

The Receiver's Motion presents only one question – Are the insurance policies and proceeds the property of the receivership estate?  The answer is no, for the reasons explained above.

---

[4]     The priority of payments is triggered when ECA makes a "written request" that the insurer pay claims under the policy.  *See* Ex. A at 046, ¶ 10 (AIG Policy).  The "written request" language does not give the Receiver the authority to request a change to the priority order.  The policy itself makes that clear, because it emphatically states that the priority order applies even if ECA is insolvent and/or in a receivership proceeding.  *Id.*

The Receiver recently filed another motion, in which he seeks to enjoin a lawsuit that Monroe recently filed in Illinois against ECA's directors and officers. *See* Mot. to Enforce Court Orders, ECF No. 369 (Mar. 26, 2020); *see also* Compl., *Monroe Capital Senior Secured Direct Loan Fund, LP v. Stein*, No. 2020 L 002475 (Ill. Cir. Ct. Cook Cty. Feb. 27, 2020), attached to ECF No. 352-1. That motion appears to assume the answer to the question posed by this motion. That is, it assumes that the receivership estate has the right to all insurance proceeds, and argues that the Court should enjoin Monroe's Illinois lawsuit because it seeks to obtain the insurance proceeds. Mot. to Enforce Court Orders 7. Monroe has the legal right to pursue its claims against the directors and officers through the Illinois lawsuit, and it intends to respond fully to the Receiver's latest motion. The Court should refrain from making any determination about the Illinois lawsuit at this time and limit its ruling to holding that the insurance policy proceeds are not property of the receivership estate.

## CONCLUSION

The Receiver's motion should be denied. The Court should hold that the insurance proceeds are not property of the receivership estate, and that the Receiver does not have some automatic right to obtain the proceeds simply because ECA is in receivership. The Court also should reaffirm that the insurance companies can administer any claims themselves, outside of the claims process.

(Signatures found on following page.)

**Civil Action No.: 18-CV-00388-TES**
Opposition to Receiver's Expedited Motion for Amendment to Comfort Order

*Signature Page*

   This 1st day of April, 2020.

         /s/ *Ivy N. Cadle*_____
         Ivy N. Cadle, Esq.
         Georgia Bar No. 353227
         **BAKER DONELSON**
         300 Mulberry Street, Suite 201
         Macon, GA 31201

         *Counsel for Monroe Capital Management Advisors, LLC, as administrative agent and collateral agent*

         /s/ *Nicole A. Saharsky*_____
         Nicole A. Saharsky (*Admitted Pro hac vice*)
         **MAYER BROWN LLP**
         1999 K. Street NW
         Washington, DC  20006

         *Counsel for Monroe Capital Management Advisors, LLC, as administrative agent and collateral agent*

         */s/ John Nadolenco*_____
         John Nadolenco (*Admitted Pro hac vice*)
         **MAYER BROWN LLP**
         350 South Grand Avenue, 25th Floor
         Los Angeles, CA  90071

         *Counsel for Monroe Capital Management Advisors, LLC, as administrative agent and collateral agent*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 1st day of April, 2020, a true and exact copy of the

foregoing document has been served on the counsel for the parties by way of filing on CM/ECF.

/s/ *Ivy N. Cadle*
Ivy N. Cadle, Esq.
Georgia Bar No. 353227
*Counsel for Monroe Capital Management Advisors, LLC, as administrative agent and collateral agent*

**BAKER DONELSON**
300 Mulberry Street, Suite 201
Macon, GA 31201
Phone: (478) 765-1823
Email:  icadle@bakerdonelson.com