# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **VC MACON, GA LLC,**<br><br>*Plaintiff*,<br><br>v.<br><br>**VIRGINIA COLLEGE LLC, and EDUCATION CORPORATION OF AMERICA,**<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:18-cv-00388-TES** |

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b) and 9(b)[1] of the Federal Rules of Civil Procedure, Defendants Virginia College LLC and Education Corporation of America have moved to dismiss with prejudice certain claims against them in Plaintiff VC Macon, GA LLC's Complaint and its Verified Amendment. [Doc. 340 at p. 1]; *see also* [Doc. 1-1]; [Doc. 340]. In their Motion, Defendants contend that the only viable claim in Plaintiff's case is its breach of contract claim, and that its claims for conversion; unjust enrichment; fraud; constructive trust; attorney's fees, costs, expenses, and interest; and punitive damages

---

[1] Defendants argue that Plaintiff's fraud claim should be dismissed with prejudice as violative of Federal Rule of Civil Procedure 9(b). [Doc. 340, pp.1, 11–13]. "[W]hen a motion based on a lack of sufficient particularity under Rule 9(b) is granted, whether or not coupled with a motion to dismiss, it will be with leave to amend the deficient pleading." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*: § 1300 (3d ed. 2004). Therefore, a plaintiff's "failure to satisfy Rule 9(b) will not automatically lead to a dismissal of the [claim], let alone one that leads to a judgment on the merits." *Id.*

are due to be dismissed. [Doc. 340 at p. 5]. Upon review of the parties' briefs and the applicable law, the Court **GRANTS in part** Defendants' Motion to Dismiss [Doc. 340].

## FACTUAL BACKGROUND

In its Complaint [Doc. 1], Plaintiff alleges that on March 19 and 22, 2010, it and Defendant Virginia College LLC entered into two lease agreements: the Operating Lease and the Capex Lease, respectively. [Doc. 1-1, p. 10, ¶¶ 3–4]. Defendant Education Corporation of America guaranteed the leases by executing a written lease guarantee for each, and "the parties agreed that venue for any action that relates to either" the leases or the guarantees "would lie in Bibb County, Georgia." [*Id.* at p. 10, ¶¶ 5–6].

Defendant Virginia College LLC once operated a for-profit college known as Virginia College. The college sat on property covered by the leases in Macon, Georgia, and received tuition through loans provided to students through the Office of Federal Student Aid offered under the Higher Education Act of 1965. [*Id.* at pp. 10–11, ¶¶ 7–8]. The tuition "[wa]s designed to cover . . . operating expenses and overhead including . . . the rent and other amounts due under" the leases. [*Id.* at p. 10, ¶ 13]. "On information and belief," Plaintiff alleges that Defendant Virginia College LLC "has received all of its tuition from students, including tuition paid for [through loans], for the current educational period." [*Id.* at p. 11, ¶ 12]. However, "instead of paying the rent and other amounts due under" the leases, Plaintiff contends that Defendant Virginia College LLC "has breached" the leases by "failing and refusing to pay monthly rental for September

2

and October 2018 and informing Plaintiff of [its] intent to vacate the premises." [*Id.* at pp. 11–12, ¶ 15]. Based on these and other allegations, Plaintiff filed suit against Defendants and asserted claims for breach of contract; conversion; unjust enrichment; fraud;[2] constructive trust; attorney's fees, costs, expenses, and interest; and punitive damages. [*Id.* at pp. 12–20].

On November 5, 2018, Defendants removed Plaintiff's Complaint from the Superior Court of Bibb County, Georgia, and filed an Answer admitting that they failed to pay timely rent and breached the leases. *See* [Doc. 8, pp. 1–5]; [Doc. 340, p. 3, ¶ 4 (citing [Doc. 8])]. Nine days later, the Court appointed John F. Kennedy as Receiver of the Receivership Estate of Education Corporation of America, Virginia College LLC, and New England School of Business and Finance (collectively, "ECA"). [Doc. 26]. With that appointment, the Court granted him very broad powers to collect, marshal, preserve, and liquidate the assets of the Receivership Estate and to distribute the proceeds of the Receivership Estate's assets for the benefit of all creditors. Via the procedural vehicle of an injunction, the Court prohibited anyone from commencing any action against ECA seeking to "recover a claim against" and from engaging in "[a]ny act to obtain possession of Receivership Property from the Receiver or to interfere with or exercise control, over, Receivership Property." [*Id.* at pp. 9–10].

---

[2] Plaintiff filed a Verified Amendment [Doc. 331] to its original Complaint amending its fraud claim and to "provide additional supporting facts for the other tort counts." [Doc. 331, p. 1].

On December 13, 2018, the Court entered a supplemental order establishing December 19, 2018, as the Rejection Date "by which the Receiver was deemed to have 'rejected, repudiated, and/or disavowed' ECA's leases and/or other occupancy agreements." [Doc. 340, pp. 3–4, ¶¶ 6–7]. As of the Rejection Date, and in no case later than December 22, 2018, the injunction lifted as to landlords, like Plaintiff, allowing them to seek state-law remedies, take possession of their leased premises, and terminate their leases. [Doc. 104, p. 2]. Then, in an effort to streamline claims against the Receivership Estate, the Receiver sought the entry of an order that would establish procedures for creditors to assert those claims. *See* [Doc. 158]; [Doc. 175]. The Court entered such an order and stated that "all Claimants holding or wishing to assert any claim, cause of action, or other right against the Receiver or Receivership Estate whether a Post-Receivership Claim, Pre-Receivership Claim or otherwise . . . must file their Claims pursuant to the Claims Process [herein] established." [Doc. 340, p. 4, ¶ 10 (citing [Doc. 175, pp. 1–2, ¶ 2])].

On April 10, 2019, Plaintiff complied with the Claims Process and filed a proof of claim in the amount of $141,177.70 for late rent, late fees on rent, interest on rent, and legal fees. [Doc. 340, p. 4, ¶ 12]. While countless hours have been spent on issues concerning the Receivership Estate, Defendants now seek dismissal of all but one of the seven claims from Plaintiff's Complaint and its Verified Amendment—the breach of contract claim. With the parties' arguments fully briefed, Defendants' dismissal motion

4

is ripe for ruling, and the Court addresses Defendants' arguments as to the six remining claims below.

## DISCUSSION

### A.   Legal Standard

When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). Under this Rule, a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). This type of motion is an "assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as a matter of law to state a claim upon which relief may be granted." *Id.*

### B.   Defendants' Motion to Dismiss

#### 1.   Conversion

To support its conversion claim, Plaintiff alleges that Defendants received tuition from its students (a portion of which was intended to pay the sums due under the leases) but failed to adhere to the terms of the leases and remit payment to Plaintiff. [Doc. 1-1, p. 14, ¶ 31–33]. In other words, Plaintiff claims that Defendants are liable for

the tort[3] of conversion because they should have used some of the tuition money to pay their rent instead of "retaining" the tuition funds. [*Id.* at p. 14, ¶ 34].

Under Georgia law, "conversion involves an unauthorized assumption and exercise of the right of ownership over property belonging to another, in hostility of his or her rights; an act of dominion over the personal property of another inconsistent with his or her rights; or an unauthorized appropriation." *McCalla Raymer, LLC v. Foxfire Acres, Inc.*, --- S.E.2d ----, 2020 WL 3566242, at *5 (Ga. Ct. App. July 1, 2020). "To make out a prima facie case, in an action for damages for conversion of personal property, the plaintiff must show title to the property, possession by the defendant, demand for possession, and refusal to surrender the property, or an actual conversion prior to the filing of the suit." *Taylor v. Powertel, Inc.*, 551 S.E.2d 765, 769 (Ga. Ct. App. 2001) (citation omitted). Certainly, "money" (in this case unpaid sums due under the leases) "constitutes personal property, money is intangible personalty that is fungible, because it belongs to a class of property which cannot be differentiated by specific identification unless there has been created a specific fund that has been set aside from other money." *Id.* Simply put, "there can be no conversion action for money damages for money, because generally, money is not subject to a civil action for conversion." *Id.* (citing *Branch v. All. Syndicate*, 469 S.E.2d 807 (Ga. Ct. App. 1996)). However, an exception for

---

[3] Federal courts sitting in diversity apply the substantive law of the state in which the case arose. *See Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938). Therefore, in this diversity case, the Court review's Plaintiff's state-law tort claims under Georgia law.

the conversion of money exists when the money comprises a specific, separate, identifiable fund to support an action for conversion. *Id.* (citing *Grant v. Newsome*, 411 S.E.2d 796 (Ga. Ct. App. 1991)). In other words, where the allegedly converted money is not specific and identifiable, an action for conversion will not lie. *Taylor*, 551 S.E.2d at 770 (citation omitted).

Here, the Court has not found, nor have the parties shown that there is anything in either the Operating Lease or the Capex Lease (or the attached guarantees) requiring Defendants to set aside or earmark a certain sum of money to fulfill Defendants' lease obligations. *See* [Doc. 1-1, pp. 21–87]. Absent such a contractual obligation in the parties' leases it is unlikely that Plaintiff could ever show that it ever had title to any tuition money "intended for use . . . to pay the sums due under the [l]eases." *McCalla Raymer*, 2020 WL 3566242, at *5; [Doc. 1-1, p. 14, ¶ 32]. Moreover, Georgia law is clear that a party's failure to pay money due under a contract does not constitute conversion. *Morris v. Nat'l W. Life Ins.*, 430 S.E.2d 813, 815 (Ga. Ct. App. 1993) ("[C]onversion . . . does not lie on account of a mere failure to pay money due under a contract."). Accordingly, Plaintiff's claim for conversion fails as a matter of law and is **DISMISSED with prejudice**.

    2.    <u>Unjust Enrichment</u>

As a quasi-contract theory, unjust enrichment "applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust

7

enrichment unless compensated." *Tidikis v. Network for Med. Comms. & Rsch. LLC*, 619 S.E.2d 481, 485 (Ga. Ct. App. 2005). Here, notably there is a legal contract: two, in fact. And while Plaintiff may, as it has, plead in the alternative both a breach of contract claim and an unjust enrichment claim, it may not recover under both. *See Clark v. Aaron's, Inc.*, 914 F. Supp. 2d 1301, 1309–10 (N.D. Ga. 2012). Of course, where a plaintiff pleads both claims and its opponent "has not conceded" that the plaintiff's ability to "recover[] under the contract," dismissal of the unjust enrichment claim would be premature because the breach of contract claim could fail. *Id.* (citing *Abels v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009)).

In this case, however, it is undisputed that valid contracts exist. Defendants admitted in their Answer that certain lease agreements exist between the parties. *See* [Doc. 8, pp. 1–5]. Thus, applying Georgia's well-established law, Plaintiff's unjust enrichment claim can be and is **DISMISSED with prejudice**. *See Tidikis*, 619 S.E.2d at 811 ("Here, any benefit conferred on the defendants was triggered by a provision in the contract, the validity of which neither [plaintiff] nor the defendants challenge. Under these circumstances, the unjust enrichment claim fails as a matter of law.").

  3. <u>Fraud</u>

As to Plaintiff's fraud claim, Defendants make hefty Rule 9(b)-based arguments in addition to three additional reasons why Plaintiff's fraud claim fails. [Doc. 340, p. 7]. First, they argue that "[t]he allegedly fraudulent statement[s] relied upon by Plaintiff,

even if true, are not actionable as a matter of law." [*Id.* at pp. 7–10]. Second, Defendants take the position that "Plaintiff's fraudulent concealment theory of liability . . . fails." [*Id.* at pp. 10–11]. And third, they contend that because Plaintiff "elected its remedy," in contract, it "cannot pursue its amended fraud claim."[4] [*Id.* at p. 12]. Let's break down Defendants' first two arguments in more detail.

Defendants begin by detailing the requirements for fraud under Georgia law. "In Georgia, '[t]he tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff.'" *Am. Fam. Life Assurance Co. of Columbus v. Intervoice, Inc.*, 659 F. Supp. 2d 1271, 1279 (M.D. Ga. 2009) (quoting *Crawford v. Williams*, 375 S.E.2d 223, 224 (Ga. 1989)). Although the tort is substantively controlled by state law, it is subject to certain procedural requirements when pled in a federal court.

The Federal Rules of Civil Procedure provide that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requirement is satisfied when a plaintiff alleges

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements

---

[4] Defendants argue that because "Plaintiff has elected to sue for breach of contract, [it] cannot also sue in tort for fraud." [Doc. 340, p. 12]. This argument, however, is, at this time, unavailing and must be revisited at a later date. While ultimately, Plaintiff cannot recover the same damages in a contract action and a tort action, it can pursue both claims, and it is not required to—at this stage—elect its remedy. [Doc. 364, p. 11 (citing *Wolfe v. Chrysler Corp.*, 734 F.2d 701, 704–05 (11th Cir. 1984) ("[A] plaintiff alleging fraud is not required to make an election of remedies prior to entry of the verdict.))].

and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Intervoice*, 659 F. Supp. 2d at 1280 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). These four pleading requirements serve an important purpose in fraud actions "by alerting defendants to the precise misconduct with which they are charged and protecting [them] against spurious charges of immoral and fraudulent behavior." *Id.*

In this case, Plaintiff filed a Verified Amendment to Complaint [Doc. 331] in an effort to strengthen its allegations against Defendants and comply with Rule 9(b)'s heightened pleading requirements. In doing so, Plaintiff "identifies statements of several former ECA employees as evidence in support of its fraud claim." [Doc. 340, p. 8]. Defendants, however, argue that because these statements fail to meet the requisite element of "justifiable reliance," they cannot form the basis of a fraud claim. Let's examine them.

- One of the alleged statements comes from an email that ECA's former Controller, Ryan Brewer, sent to Plaintiff in July 2018. [Doc. 331, ¶ 46]. In that email, Brewer wrote: "As you can infer from our recent payment history, cash is really tight right [*sic*] as we get through our seasonal drop in enrollment. I expect August to be slow also, but we should be back on track in September and October as enrollment seasonally increases." [*Id.*].

- Another statement Plaintiff alleges it relied upon includes Brewer's assertions in *May 2015* regarding added revenue for ECA to the tune of $220 million and his assurances to Plaintiff that "Defendants were adequately funded by representing $30,000,000 in equity . . . and [that] an additional $30,000,000 in equity would soon be contributed."[5] [Doc. 331, ¶¶ 48–49].

- Next, Plaintiff claims that in October 2017, Brewer wrote: "At this time, we have had zero adverse funding during the handful of site visits that have been completed. We anticipate being fully accredited . . . sometime between March and May of 2018." [*Id.* at ¶ 50].

- In addition to Brewer's statements, "Plaintiff also identifies allegedly fraudulent statements made by Defendants' former General Counsel to an official at the Department of Education and by Defendants' former Chief Financial Officer in a declaration filed in another action." [Doc. 340, p. 9]. In these statements, Defendants represented to the Department of Education that "they had budgeted $5,400,679 for rent and intentionally

---

[5] This specific allegation to support Plaintiff's fraud claim is specious at best. Plaintiff claims that "Defendants are liable to" it for unpaid rents and other monies "for the months of September and October 2018." [Doc. 1-1, p. 12, ¶ 16]. That means, Plaintiff claims that it was misled by Defendants' assurances for nearly 40 months. Looking at Plaintiff's pleadings, it appears that—for most of those months, from May 2015 until September 2018—it received rent payments. Thus, given the window of time between Brewer's May 2015 assertions and Defendants' default on the leases, it is difficult to imagine how Plaintiff's reliance was justified or how the contents of this statement misled Plaintiff from taking or not taking an action. *See Intervoice*, 659 F. Supp. 2d at 1280.

11

>did not pay it as a 'strategy'" "while [they] continue[d] . . . negotiations."
>
>[Doc. 331, ¶¶ 54(b), 54(*l*)].

The first three sets of these statements (Brewer's statements), Defendants argue, are expectations and predictions of future events and as such "cannot be justifiably relied upon as a matter of law" to sustain an actionable fraud claim. [Doc. 340, pp. 8–9 (citing *Riddle v. Driebe*, 265 S.E.2d 92, 95 (Ga. Ct. App. 1980) ("Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events."))]. The last set, they argue, contains statements that Plaintiff admits were made to a third party and as such are not actionable as fraud because they "were never made *to* . . . Plaintiff and never relied upon *by* Plaintiff." [Doc. 340, p. 9 (first quoting *UWork.com, Inc. v. Paragon Techs., Inc.*, 740 S.E.2d 887, 898 (Ga. Ct. App. 2013) ("The general rule in Georgia is that 'actionable fraud must be based upon a misrepresentation made *to* the defrauded party, and relied upon *by* the defrauded party.'")) and then citing [Doc. 331, ¶¶ 54(a), 54(h), 54(i), 54(p) (affirming that the statements made to the Department of Education were never provided to Plaintiff)]].

Clearly, Defendants approach Plaintiff's fraud claim with an element-based attack, arguing that Plaintiff could not have justifiably relied upon the above-mentioned statements. *See Intervoice*, 659 F. Supp. 2d at 1280, *supra*. Plaintiff, however, takes more of a "[s]ilence may be fraud" stance and contends that its fraud claim is actionable because Defendants had an obligation to disclose financial information but failed to do

so. [Doc. 364, pp. 8–10 (citing *Purchasing Power, LLC v. Bluesteam Brands, Inc.*, No. 1:12-cv-00258-WSD, 2012 WL 3065419, at *6 (N.D. Ga. July 27, 2012) ("Georgia law recognizes that the omission of a fact may form the basis of a fraud if the omitting party is under an obligation to communicate the fact."))].

Essentially, Plaintiff argues that Defendants' had an obligation to make certain disclosures because they (1) intentionally concealed a fact (2) for the purpose of obtaining an advantage or benefit and points to "[n]umerous paragraphs" in its pleadings that allege Defendants' "intent to . . . deceive" in order to support this argument. [Doc. 364, pp. 8–9 (first citing O.C.G.A. § 23-2-53 and then citing *Reeves*, 127 S.E. at 295)].

For example, Plaintiff mentions Brewer's July 2018 statement regarding the seasonal drop in enrollment and alleges that "[a]t the time Brewer transmitted this email, he knew it was false, silent as to a material fact[,] and misleading." [*Id.* at p. 9 (citing [Doc. 331, ¶ 47])]. According to Plaintiff's allegations, Brewer's silence "evidence[s] the scheme and artifice employed by Defendants to conceal the materials [*sic*] facts of Defendants' failing financial condition and to intentionally mislead Plaintiff by failing to accurately report such material facts." [Doc. 331, ¶ 47]. The "motivation" behind this alleged concealment was, according to Plaintiff, "obvious"—nothing more than a strategic delay tactic so that Defendants could "syphon[]" "millions of dollars" to its "related entities," "continue to collect student tuition and Title IV funds," and "deter

13

Plaintiff from pursuing its remedies." *See, e.g.*, [*id.* at ¶¶ 54(b), 54(*l*), 54(ii), 54(jj)]; [Doc. 364, p. 9].

Crucial to Plaintiff's fraud claim will be Defendants' intent at the time they made certain statements, which "may be alleged generally." Fed. R. Civ. P. 9(b); *See EHR Concepts, LLC v. Ficus Consulting Grp.*, No. 3:15-cv-193-TCB, 2016 WL 8814368, at *7 (N.D. Ga. Sept. 15, 2016) (citing *Shuford v. Ames Plumbing & Heating, Inc.*, 761 S.E.2d 395, 400 (Ga. Ct. App. 2014) ("The intent which constitutes an essential element of fraud is an intent that the representation be acted upon by the other party[,] and it is a jury question except in plain and palpable cases.")). In the end, however, Plaintiff must demonstrate that Defendants silence or their allegedly misleading representations were made with the intention to induce it from acting or refraining from acting. *Intervoice*, 659 F. Supp. 2s at 1279. That said, the Court (as Defendants argued) recognizes that "[f]raud cannot consist of mere broken promises, unfulfilled predictions[,] or erroneous conjecture as to future events." *Am. Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1364 (N.D. Ga. 2006) (quoting *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1027 (11th Cir. 2003)); *see also* [Doc. 340, pp. 8–9]. Actionable fraud does

not result from a party's unjustified reliance[6] on—as Defendants' allegedly made—representations of hope and expectation. *Ellis*, 426 F. Supp. 2d at 1364.

"Applying these principles," many of Defendants' alleged misrepresentations "probably do not form the basis of a fraud claim." *Id.* However, the Court cannot at the pleading stage say that Plaintiff's fraud claim fails as a matter of law based on its allegations that Defendants acted with "specific intent" when they concealed "information as a scheme and artifice to deceive and mislead [it]." *See, e.g.*, [Doc. 331, ¶¶ 54(r), 54(rr), 54(bbb)]. The Georgia Supreme Court has held

> with respect to an initial motion to dismiss, or motion to strike, that a claim of fraud should not be dismissed unless it appears beyond doubt that the pleader can prove no set of facts in support of the claim which would entitle him to relief, and that the remedy at that stage of the pleading is not a motion to dismiss but a motion for more definite statement.

*Dixon v. Branch Banking and Tr. Co.*, 824 S.E.2d 760, 765–66 (Ga. Ct. App. 2019) (quoting *Roberts v. JP Morgan Chase Bank, Nat'l Assoc.*, 802 S.E.2d 880, 886 (Ga. 2017)); Fed. R. Civ. P. 12(e).

This, of course, only forecasts the Georgia Supreme Court's guidance on state procedure laws which do not apply in federal diversity actions. *See* n.3, *supra*. However, the Eleventh Circuit Court of Appeals takes a similar stance. Where a plaintiff makes

---

[6] "To establish justifiable reliance, 'it is not sufficient to show that false representations were knowingly made with an intent to deceive.'" *Hornsby v. Auto. Ins. of Harford*, No. 1:17-cv-04526-LMM-RGV, 2018 WL 6720425, at *5 n.8 (N.D. Ga. Oct. 17, 2018) (citation omitted). Plaintiff also must allege that that it "acted with 'due care' to discover the fraud to support a finding of justifiable reliance, an essential element of a fraud claim under Georgia law." *Id.* (citations omitted).

"conclusory allegations of fraud . . . [it] is entitled to one chance to amend the complaint and bring it in compliance with [Rule 9(b)]." *Cooper v. Blue Cross Blue Shield of Fla., Inc.*, 19 F.3d 562, 568–69 (11th Cir. 1994). Thus, because this is the first opportunity the Court has had to review Plaintiff's pleadings under Rule 9(b) scrutiny, its failure to satisfy the rule doesn't end its claim, but it will have to replead it to fit the "kind[] of fraud" it alleges. *Dixon*, 824 S.E.2d at 776; *see* n.1, *supra*. Even though Plaintiff's suppression-of-fact fraud claim under O.C.G.A. § 23-2-53 doesn't take the more familiar fraud route, it is still required to "aver[]" its allegations "with particularity," "not . . . generally." *Dixon*, 824 S.E.2d at 776 (citation omitted). If it chooses to replead, Plaintiff must "allege specific facts to support a finding that [it] acted upon or refrained from acting upon [Defendants'] actions." *Id.* Of course, Plaintiff alleges multiple times that Defendants' concealment was a "scheme and artifice" to "deceive," "mislead," and "defraud" it. *See, e.g.*, [Doc. 331, ¶¶ 54(j), 54(m), 54(r), 54(t), 54(mm), 54(rr)]. However, what it doesn't allege is *how* Defendants' alleged actions—or lack thereof—specifically harmed it. On this, Plaintiff's allegations are sweeping, far from meeting the particularized averments required by Rule 9(b).

For example, Plaintiff alleges that "Defendants' election not to inform Plaintiff of its failing financial condition was made . . . without regard to the impact upon Plaintiff." [*Id.* at ¶ 54(*ll*)]. What impact? Were Defendants under some sort of contractual obligation, aside from adhering to the leases' terms, to look out for

16

Plaintiff's wellbeing? Clearly, Plaintiff claims that Defendants' concealment was "in an effort to deter [it] from pursuing its remedies," but how did Defendants' alleged concealment *actually* cause harm? [*Id.* at ¶ 54(xx) ("At all times relevant hereto Defendants remained silent knowing that Plaintiff would have acted differently to protect its interests . . . .")]. How did Defendants know Plaintiff would have acted differently? Did Plaintiff tell them? And exactly what remedies did Plaintiff defer from taking based on these allegations? Finally, Plaintiff claims that Defendants' concealment was "to the detriment of Plaintiff," but that is all that is alleged. [*Id.* at ¶ 54(aaa)]. Again, this begs two questions: What was the detriment? And how harm did it actually cause harm? Neither the Complaint nor its Verified Amendment provide any details on this.

Importantly, "[i]n the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is created no confidential relationship by this alone." *William Goldberg & Co. v. Cohen*, 466 S.E.2d 872, 881 (Ga. Ct. App. 1995) (citation omitted). However, whatever trust and confidence Plaintiff and Defendants had at the beginning of their business relationship does not erase Plaintiff's "duty to prosecute [its] own inquiries in order to ascertain the true financial situation of" Defendants' companies. *Citizens and S. Nat'l Bank, Augusta v. Arnold*, 240 S.E.2d 3, 4 (Ga. 1977); *see also* n.6, *supra*.

In summation, Plaintiff's allegation that Defendants "syphoned" "millions of dollars" to their related entities may satisfy Rule 9(b)'s requirement that "the complaint

17

set forth . . . what the defendants obtained as a consequence of the fraud," but the allegations for its overarching prima facie case for fraud are lacking as to the fifth element: "damage to plaintiff." *Intervoice, Inc.*, 659 F. Supp. 2d at 1279; *Neal v. Nationstar Mortg., LLC*, No. 1:15–cv–316–WSD, 2015 WL 5174047, at *5 (N.D. Ga. Sept. 2, 2015); [Doc. 364, p. 6 (citing *Ziemba*, 256 F.3d at 1202)]; [Doc. 331, ¶ 54(ii)]. The conclusory allegation that "Plaintiff has been damaged as the result of such fraud[,]" simply won't cut it.[7] [Doc. 331, ¶ 54(bbb)]. Plaintiff needed to, at minimum, allege these specifics for its fraud claim: (1) what actions it didn't take based on Defendants' assertions, actions, or inactions and (2) how it was harmed.

As it stands now, Plaintiff's fraud claim is due to be **DISMISSED without prejudice** pursuant to Rule 9(b). However, dismissal of this claim, if Plaintiff chooses, is accompanied with leave to amend the deficient pleading consistent with the Court's discussion above. *Ellis*, 426 F. Supp. 2d at 1364; *see* n.1, *supra*.

    4.    <u>Constructive Trust; Attorney's Fees, Costs, Expenses, and Interest; and Punitive Damages</u>

On these three claims, Defendants are correct in that they are not independent causes of action and "cannot form the basis for liability." [Doc. 340, p. 13].

---

[7] Defendants even admit in briefing that "[a]ll of Plaintiff's injuries are the result of the breach of the leases." [Doc. 340, p. 12]. These injuries will be made whole by a compensatory damage award pursuant to a breach of contract claim, but ostensibly, Plaintiff seeks more via a fraud claim. However, by seeking additional (punitive) damages in tort, Plaintiff is going to have properly plead its fraud claim.

First, a constructive trust is an equitable, court-created remedy and is only "available to a plaintiff whose unjust enrichment claim has prevailed." *Walia v. Walia*, --- S.E.2d ----, 2020 WL4361121, at *4 (Ga. Ct. App. July 30, 2020) (Colvin, J.) (citing *St. Paul Mercury Ins. v. Meeks*, 508 S.E.2d 646, 648 (Ga. 1998). The remedy itself is not an independent cause of action available to Plaintiff but is instead a device by which Plaintiff's property might have been recovered if its unjust enrichment claim were viable. *St. Paul Mercury*, 508 S.E.2d at 648. However, because the Court has already dismissed Plaintiff's unjust enrichment claim, its "constructive trust" claim must follow suit, and it is **DISMISSED with prejudice** as well. *See* Discussion, Section (B)(2), *supra*.

Lastly, "[t]he derivative claims of attorney fees and punitive damages will not lie in the absence of a finding of compensatory damages on an underlying claim." *D.G. Jenkins Homes, Inc. v. Wood*, 282 S.E.2d 478, 482 (Ga. Ct. App. 2003). Merely derivative claims stemming from a tort claim that has been dismissed must also be dismissed. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1304 (11th Cir. 2009) (citing *D.G. Jenkins*, 282 S.E.2d at 482). Thus, because the Court has concluded that Plaintiff's conversion and fraud claims are due to be dismissed, its claim for punitive damages must, for now, also be **DISMISSED without prejudice**.

## CONCLUSION

To recap, the Court **GRANTS** Defendants' Motion to Dismiss [Doc. 340] **in part**. Plaintiff's claims for conversion, unjust enrichment, and constructive trust are all

19

**DISMISSED with prejudice**, and its claims for fraud; attorney's fees, costs, expenses, and interest, and punitive damages are all **DISMISSED without prejudice**. In light of this ruling and Defendants' admission that they breached the leases, the Court will await a motion for judgment on the pleadings with respect to Count One of Plaintiff's Complaint. The Court **LIFTS** the Stay [Doc. 285] imposed on October 25, 2019.

**SO ORDERED**, this 27th day of August, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**
