# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **VC MACON, GA LLC,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:18-cv-00388-TES** |
| **VIRGINIA COLLEGE LLC, and EDUCATION CORPORATION OF AMERICA,** | |
| *Defendants.* | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

The Court has laid out the factual and procedural background of this receivership case in an earlier Order, which the Court incorporates by reference. [Doc. 434, pp. 2–4].[1] To briefly recap, the Court previously dismissed with prejudice Plaintiff's claims for conversion, unjust enrichment, and constructive trust, and dismissed without prejudice Plaintiff's claims for fraud, attorney's fees, costs, expenses, interest, and punitive damages. [*Id*. at pp. 19–20]. In response to that Order, Plaintiff filed its Second Verified Amended Complaint, seeking to properly plead a fraud claim and add a claim of negligent misrepresentation. [Doc. 438]. Plaintiff also re-asserted its claims for attorney's fees, costs, expenses, interest, and punitive damages. Defendants once again

---

[1] *VC Macon, LLC v. Virginia Coll. LLC*, No. 5:18-cv-00388-TES, 2020 WL 5079165 (M.D. Ga. Aug. 27, 2020).

moved to dismiss Plaintiff's complaint, except for Plaintiff's breach of contract claim—a claim Defendants do not dispute. [Doc. 443]. The parties have fully briefed their positions and the motions stands ready for the Court to rule.

## DISCUSSION

### A.    Legal Standard

When ruling on a Rule 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts use a two-step framework. *Id*. The first step is to identify the allegations that are "no more than mere conclusions." *Id*. (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id*. (citation omitted). After disregarding the conclusory

allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion must be dismissed if it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333; *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds* by *Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint

"must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

### B.   Defendants' Motion to Dismiss

When the Court considered Plaintiff's fraud claim in its Verified Amended Complaint [Doc. 331], the Court found that it fell short of Rule 9(b)'s specificity requirements. [Doc. 438, pp. 8–18]. In its Second Verified Amended Complaint, Plaintiff seeks to allege a fraud claim in two ways: a traditional fraud claim based on Defendants' allegedly fraudulent misstatements made to Plaintiff and one based on a fraudulent concealment theory, or, in other words, fraud by silence.

Defendants attack Plaintiff's traditional fraud claim by arguing Plaintiff makes no showing of justified reliance or damages—two mandated elements of a Georgia fraud claim. Defendants also argue that Plaintiff's fraudulent concealment theory fails because there is no "confidential relationship" between the parties, nor do the "particular circumstances" of the case give rise to a duty to disclose. Finally, Defendants argue that all remaining allegations fall short of Rule 9(b)'s pleading standard.

    1.   **Misstatements**

First, the Court will consider whether Plaintiff has stated a fraud claim based on

Defendants' statements to Plaintiff. "In Georgia, '[t]he tort of fraud has five elements: a

false representation by a defendant, scienter, intention to induce the plaintiff to act or

refrain from acting, justifiable reliance by plaintiff, and damages to plaintiff.'" *Am. Fam.*

*Life Assurance Co. of Columbus v. Intervoice, Inc.*, 659 F. Supp. 2d 1271, 1279 (M.D. Ga.

2009) (quoting *Crawford v. Williams*, 375 S.E.2d 223, 224 (Ga. 1989)). "Although the tort is

substantively controlled by state law, it is subject to certain procedural requirements

when pled in a federal court." *VC Macon, LLC v. Virginia Coll. LLC*, No. 5:18-cv-00388-

TES, 2020 WL 5079165, at *4 (M.D. Ga. Aug. 27, 2020). Federal Rule of Civil Procedure

9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity

the circumstances constituting fraud or mistake." This requirement is satisfied when a

plaintiff alleges

> (1) precisely what statements were made in what documents or oral
> representations or what omissions were made, and (2) the time and place
> of each such statement and the person responsible for making (or, in the
> case of omissions, not making) same, and (3) the content of such statements
> and the manner in which they misled the plaintiff, and (4) what the
> defendants obtained as a consequence of the fraud.

*Intervoice, Inc.*, 659 F. Supp. 2d at 1280 (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d

1194, 1202 (11th Cir. 2001)). Defendants argue that the allegedly fraudulent statements

relied on by Plaintiff, even if true, are not actionable as a matter of law because Plaintiff

fails to allege any justifiable reliance or damages—required elements of a fraud claim under Georgia law. [Doc. 443, p. 7].

Plaintiff relies on the following statements from Defendants' representatives to support its fraud claim, which the Court accepts as true:

- On July 18, 2018, when Ryan Brewer provided the 2017 audited financial statements to Plaintiff, he wrote: "As you can infer from our recent payment history, cash is really [t]ight as we get through our seasonal drop in enrollment. I expect August to be slow also, but we should be back on track in September and October as enrollment seasonally increases." [Doc. 438, ¶¶ 54(i), 54(l)].

- On October 6, 2017, in response to an email Plaintiff sent to Defendants inquiring about their accreditation status, Brewer replied to Plaintiff: "At this time, we have had zero adverse finding (sic) during the handful of site visits that have been completed. We anticipate being fully accredited by ACCET sometime between March and May of 2018." [Doc. 438, ¶ 54(p)].

- On July 6, 2015, Defendants replied to Plaintiff's inquiry about the Kaplan purchase by stating that the purchase of Kaplan would "ultimately add [$220 million] of revenue and [$15 million] of incremental [earnings before

interest, taxes, depreciation, and amortization ("EBITDA")] to the

company." [Doc. 438, ¶ 54(n)]; [Doc. 438-2, pp. 6-7].

- Also on July 6, 2015, Defendants represented to Plaintiff that equity group
  Willis Stein contributed [$30 million] of capital into the business, and that
  the purchase of Kaplan using preferred stock would add "almost another
  [$30 million] of equity into the calculation." [Doc. 438, ¶ 54(o)]; [Doc. 438-
  2, pp. 5-6].

Defendants argue that these statements cannot support a viable fraud claim

because they predict a future event and therefore cannot be justifiably relied on by

Plaintiff as a matter of law. [Doc. 443, p. 8 (quoting *Next Century Comms. Corp. v. Ellis*,

214 F. Supp. 2d 1366, 1371 (N.D. Ga. 2002))]. Plaintiff counters that it meets a recognized

exception to this rule. [Doc. 444, p. 12].

In *Denim N. Am. Holdings, LLC v. Swift Textiles, LLC*, this court held that "a

promise as to future events . . . made with a present intent not to perform or where the

promisor *knows that the future event will not take place*" marks an exception to the rule

that fraud cannot be predicated on statements which are in the nature of promises as to

future events. 816 F. Supp. 2d 1308, 1322–23 (M.D. Ga. 2011) (emphasis added) (quoting

*BTL COM Ltd. v. Vachon*, 628 S.E.2d 690, 694 (Ga. Ct. App. 2006)). The court reasoned

that this exception makes sense because "if the party making the statement lacks

knowledge of or power over the matter, he cannot have a present intent not to perform

or knowledge that the future event will not take place." *Id*. at 1323. In *Denim*, the plaintiff's fraudulent inducement claim related to future sales projections—something the "Defendants had both knowledge and power over." *Id*. There, the plaintiff alleged that the defendants knew the sales projections would not be achieved as promised at the time the representation was made. *Id*.

Plaintiff argues that the Defendants' statements about accreditation status are just like the statements about future sales projections in *Denim*. [Doc. 444, pp. 12–13]. Specifically, Plaintiff argues that the important point is that when Defendants made these statements to Plaintiff, they *knew* they were false. [*Id*. at p. 12]. For example, Plaintiff argues that when Brewer assured Plaintiff that Defendants would be financially stable, Defendants already knew they were not accredited and that their federal funding was in jeopardy. [Doc. 444, pp. 12–13]. But, "this exception does not apply where the 'promises upon which the [party] relies . . . were unenforceable as a contract even absent any fraud at the time of their utterance.'" *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1345 (11th Cir. 2017) (quoting *Taylor v. Amisub, Inc.*, 368 S.E.2d 791, 793 (Ga. Ct. App. 1988)).

Critically, the Court finds that Plaintiff never definitively alleged that when Brewer made the allegedly fraudulent statements listed above, he had "a present intent not to perform or knowledge that the future event will not take place." *Denim*, 816 F. Supp. 2d at 1322–23. However, in its brief opposing this motion, Plaintiff argues that

the importance of the statements made by Defendants is that at the time they were made to Plaintiff, Defendants *knew that they were false*. As set forth above, in May 2018 when Brewer *remained silent* as to Defendants' accreditation status and at the same time *assured Plaintiff that Defendants would be financially stable*, Defendants were already aware that they were not accredited and that their federal funding was not in jeopardy."

[Doc. 444, pp. 12–13 (emphasis added)].

It is important to note precisely what (and where) Plaintiff is and is not saying here. First, this portion of Plaintiff's brief never cites to a specific paragraph in the operative complaint. Moreover, the Court could not locate any reference to a "May 2018" statement in the operative complaint where Brewer assures Plaintiff that Defendants will be financially stable.[2] And, of course, what matters is what factual allegations Plaintiff chose to include in its operative complaint, not in its briefs. Factual assertions raised in Plaintiff's brief that are not in the operative complaint are not entitled to the presumption of truth and must be ignored by the Court. *Twombly*, 550 U.S. at 572. Next, Plaintiff only argues that upon learning that Defendants lost their accreditation, they "remained silent." [Doc. 444, p. 13]. Likewise, Plaintiff does not allege that after learning that they had actually lost their accreditation, the Defendants then affirmatively lied to Plaintiffs by telling them that they were still accredited.

---

[2] To the extent Plaintiff argues that Defendants committed fraud by "remaining silent" in May 2018, that argument will be addressed in the fraudulent concealment section. However, to be clear, the Court is unaware of any other allegation in the Second Verified Amended Complaint that Brewer made "at the same time"—meaning in May 2018—to Plaintiffs, much less one in which he lied about Defendants' accreditation status. *See* [Doc. 444, pp. 12–13].

Unlike the *Denim* defendants who unquestionably knew that their sales projections were wrong, Plaintiff did not include any allegation in the operative complaint that the Defendants here *knew* they would not be accredited at the time they made any representation to the contrary. True, Plaintiff alleges that Defendants became aware they lost accreditation in May 2018. *See* [Doc. 438, ¶ 54(q)]. However, the only allegedly fraudulent statement Plaintiff attributed to Defendants after May 2018 was the July 2018 statement where Brewer wrote "[a]s you can infer from our recent payment history, cash is really [t]ight as we get through our seasonal drop in enrollment. I expect August to be slow also, but we should be back on track in September and October as enrollment seasonally increases." [Doc. 438, ¶¶ 54(i), 54(l)]. This statement does not contain any fact that Brewer would know for a fact to be untrue. If Brewer had said, "We are good to go on the accreditation front," it might be a different story. Instead, Brewer makes a prediction about the future—that Defendants would soon "be back on track"—a statement containing no lie about their accreditation status and something that Plaintiff does not allege Brewer knew for certain would not occur. [*Id.*].

Thus, the July 18, 2018 statement cannot be justifiably relied upon and is therefore not actionable as fraud. Brewer's use of the words "expect" and "should" plainly show his statement to be a prediction of a future event. Plaintiff does not allege facts in its operative complaint that show it is "plausible" that Defendants knew this statement was false at the time Brewer made the statement. *Twombly*, 550 U.S. at 556–57.

To be clear, even assuming Brewer knew his statement was *unlikely* to come to fruition, that is still not enough as the exception requires "knowledge that the future event *will not occur*." *Feldman*, 849 F.3d at 1345 (emphasis added) (quoting *Taylor*, 368 S.E.2d at 793). Therefore, in regards to this statement, Plaintiff falls short of meeting the exception to the rule that predictions of future events may not be justifiably relied upon.

The same is true for the October 6, 2017 statement, which uses the word "anticipate"—another word indicating that the speaker is predicting a future event. And, once again, nowhere in Plaintiff's Second Verified Amended Complaint does Plaintiff allege that Defendants knew—for a fact—that they would not be accredited at a certain point in time in the future when Brewer made this statement.

Further, Defendants' July 6, 2015, statements regarding the $30 million recent capital contribution, expected future $30 million capital contribution, and expected future revenue and EBITDA amounts may not be justifiably relied upon. Plaintiff never alleged that the representation of the (at the time) already-received $30 million was false, or that Defendants knew that the financial projections were wrong.

Plaintiff also refers to the Defendants' financial statements when describing its fraud claim. *See, e.g.*, [Doc. 438, ¶¶ 54(a), (b), 54(pp)–54(ww)]; [Motion to Dismiss Hearing, Doc. 452, p. 29:3–4 ("Actually [Plaintiff does] make the allegation that the financial statements were inaccurate as well.")]. To the extent Plaintiff seeks to base a fraud claim on the financial statements being actionable misstatements, it falls short.

Plaintiff never alleges in its Second Verified Amended Complaint that any of the dollar amounts in the financial statements are incorrect. What Plaintiff does seem to argue is that the financial statements cloaked the fact that Defendants were transacting with related entities. *See* [*id*. at p. 29:5–21]. Plaintiff's theory misses the mark.

Just because Plaintiff may not have known which entity Defendants transacted with does not mean that Defendants made a misstatement to Plaintiff. Further, the financial statements *disclose* related-party transactions; Plaintiff points to these very financial statements as evidence that Defendants "diverted money to unknown parties." *See* [*id*.]; [Doc. 438, ¶ 54(rr)]. Defendants' financial statements do not "cloak" related-party transactions; they instead disclose their exact amount.

Plaintiff also seems to complain in its Second Verified Amended Complaint that the financial statements lack detail about the entities on the opposite side of various transactions and expense line items, and that this lack of detail proves fraud. [Doc. 438, ¶¶ 54(rr)–54(ss)]. Plaintiff also claims fraud because the "Related-Party Transactions" section of its financial statements does not specify who the related parties are. [Doc. 438, ¶¶54(rr)–54(ss)]. It seems to the Court that Plaintiff misunderstands the purpose of audited financial statements. To disclose every entity that a company does business with during a fiscal year underneath each financial statement line item would be ridiculously burdensome. If that is what Plaintiff wanted Defendants to provide them with annually, it should have contracted to have Defendants divulge to Plaintiff its

various ledgers along with all supporting documentation instead of only requiring Defendants to provide financial statements. Just because the financial statements do not provide as much detail as Plaintiff would like does not mean that the financial statements contain an actionable misstatement, much less actual fraud. The financial statements disclose the amount of Defendants' related-party transactions, just not in the detail Plaintiff now wants. To the extent Plaintiff argues that Defendants had a duty to disclose more than they did, the Court will consider that argument in the fraudulent concealment section below.

In sum, Plaintiff's fraud claim based on Defendants' alleged misstatements fails because Plaintiff fails to allege facts that satisfy the justified reliance element of a fraud claim.

2.    **Fraudulent concealment**

Next, the Court will consider whether Plaintiff has stated a fraud claim based on Defendants' alleged fraudulent concealment of information with the intent to deceive and mislead. O.C.G.A. § 23-2-53 provides: "Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Plaintiff argues that the "particular circumstances" of this case "obliged Defendants to speak up" about their accreditation issues and the impact it had on their financial condition. [Doc. 444, p. 10]. Specifically,

Plaintiff argues that had Defendants supplied it with accurate information about their accreditation status, an important factor to consider when predicting the Defendants' future revenue, it would have been able to know that selling the leased property or re-leasing it to a third party would have been the more-profitable path forward.

Defendants argue that it had no duty to disclose the allegedly withheld information to Plaintiff, and that Plaintiff fails to connect the Second Amended Complaint's allegations of fraudulent conduct to the harm Plaintiff allegedly suffered.

The general rule is that there can be no fraud without an express misrepresentation. *See Miller v. Lomax*, 596 S.E.2d 232, 237 (Ga. Ct. App. 2004). However, a "party can be held liable for fraudulently concealing a material fact only if the party has a duty to disclose or communicate the fact." *Lilliston v. Regions Bank*, 653 S.E.2d 306, 310 (Ga. Ct. App. 2007) (citing *Lomax*, 596 S.E.2d at 238). To determine whether Defendants had an "obligation" to update Plaintiff on their accreditation status under O.C.G.A. § 23-2-53, the Court must consider whether there is a "confidential relationship" between the parties, or whether the "particular circumstances" of this case give rise to such an obligation.

Easiest one first. There is no "confidential relationship" between Defendants and Plaintiff. "Generally, business relationships are not confidential relationships." *Williams v. Dresser Indus., Inc.*, 120 F.3d 1163, 1169 (11th Cir. 1997) (citing *Dover v. Burns*, 196 S.E. 785 (Ga. 1938)). "In cases where Georgia courts have found the existence of a

confidential relationship in business, the parties have had either a history of business dealings with each other or the kind of relationship that is not arms-length, such as a partnership or principal and agent." *Id*. Further, "[t]he mere fact that one reposes trust and confidence in another's integrity does not create a confidential relationship." *Id*. At bottom, the inquiry is whether Plaintiff and Defendants simply had a business relationship, or *something more*. Taking the allegations in Plaintiff's complaint as true, the Court is unable to conclude anything other than this is a textbook landlord and tenant relationship, which is an arms-length relationship. To hold otherwise would mean that every landlord and tenant have a confidential relationship, thus turning every contract dispute between landlords and tenants into a fraud case. Plaintiff has cited to no law that supports such a theory.

Second, the "particular circumstances" of this case do not give rise to an obligation for Defendants to disclose accreditation information to Plaintiff. "Those cases where Georgia courts have found particular circumstances giving rise to a duty to disclose involve dependent relationships sufficient to overcome the will of a party." *Mitchell v. Ford Motor Credit Co.*, 68 F. Supp. 2d 1315, 1320 (N.D. Ga. Nov. 25, 1998) (citing *Cochran v. Murrah*, 219 S.E.2d 421, 423 (Ga. 1975)). Again, the relationship between Plaintiff and Defendants is that of sophisticated parties to an arms-length business transaction, which is not a "dependent relationship[] sufficient to overcome the will of a party." *Mitchell*, 68 F. Supp. 2d at 1320.

In cases where Georgia courts find the "particular circumstances" to give rise to a duty to disclose, "the parties alleged that the actions constituting fraud were committed in violation of the terms of an existing contract regulating the particular actions." *Williams*, 120 F.3d at 1169 (referring to *Gellis v. B.L.I. Constr. Co.*, Inc., 251 S.E.2d 800 (Ga. Ct. App. 1978); *Tower Fin. Servs., Inc. v. Jarrett*, 404 S.E.2d 622 (Ga. Ct. App. 1991); *Hendrix v. Scarborough*, 206 S.E.2d 42 (Ga. Ct. App. 1974)).

With this in mind, at the January 20, 2021, Motion to Dismiss hearing, the Court asked Plaintiff to file a supplemental brief pointing out where the contract gives rise to an obligation for Defendants to disclose the allegedly withheld accreditation information. Plaintiff complied, and Defendants responded. *See* [Doc. 453]; [Doc. 455].

Plaintiff brought the following lease provisions to the Court's attention in its supplemental brief:

- It shall be an "event of default" by the Tenant if "Tenant or any Guarantor shall become insolvent, or shall make a transfer in fraud of creditors." [Doc. 1-1, pp. 39, 70].

- "Guarantor hereby represents and warrants that all financial statements submitted by Guarantor to Landlord in connection with the Lease are true and correct in all respects, and fairly present the financial condition of Guarantor." [Doc. 1-1, pp. 54, 87].

16

- "Upon written request from Landlord to Tenant, not more often than once in every twelve (12) month period, Tenant will furnish Landlord with audited financial statements and current financial statements for Tenant and Guarantor not later than fourteen (14) days following such request. The failure to fully satisfy Landlord's request shall not bar another request for the balance of such statements prior to the expiration of said 12-month period. Such statements of financial condition shall include balance sheets, profit and loss statements and any related footnotes." [Doc. 1-1, pp. 47, 78].

The Court will start with the "transfer in fraud of creditors" provision. [Doc. 1-1, pp. 39, 70]. Plaintiff alleges that Defendants diverted money to unknown parties. *See* [Doc. 438, ¶ 54(rr)]. This brings us back to the earlier discussion about how Defendants disclosed the amount of related-party transactions, but did not disclose on the face of their financial statements the specific entities these transactions were with. First, Defendants did disclose the total amount of related-party transactions on all of their financial statements given to Plaintiff. Second, for Plaintiff to argue that just because they do not know the name of every related entity that Defendants transacted with during the lease term so that Defendants must have committed a "transfer in fraud of creditors" falls well below the plausibility standard. *See Iqbal*, 556 U.S. at 668.

Next, the Court will consider the lease provisions relating to Defendants' contractual obligation to provide Plaintiff with audited financial statements. *See* [Doc. 1-1, pp. 47, 54, 78, 87]. Plaintiff argues that Defendants violated the lease provision guaranteeing the financial statements "are true and correct in all respects, and fairly present the financial condition of Guarantor." [Doc. 1-1, pp. 54, 87]; [Doc. 453, p. 2]. The leases go on to specify that "[s]uch statements of financial condition shall include balance sheets, profit and loss statements and any related footnotes." [Doc. 1-1, pp. 47, 78]. Again, Plaintiff does not allege in its complaint that any of the amounts in the financial statements are false. And the leases speak to the type of information that must be "true and correct" and "fairly present the financial condition of the Guarantor"—balance sheets, profit and loss statements and any related footnotes. [Doc. 1-1, pp. 47, 78]. Notably, Plaintiff does not allege that Defendants breached this provision. Just because Plaintiff decided after-the-fact it wished it had information, such as the names of the related parties who received management fees from 2010 to 2014, or the identity of certain shareholders, or even certain details about accreditation, does not mean that Defendants violated the "fairly present the financial condition of the Guarantor" provision when the financial statements the lease contemplated were provided without error. *See* [Doc. 438, ¶¶ 54(ss)–54(tt)].

The leases also require Defendants to timely provide Plaintiff with audited financial statements not more than once per year by a specified deadline upon request

by Plaintiff. [Doc. 1-1, pp. 47, 78]. Plaintiff alleges that Defendants violated this provision of the lease by not providing the 2017 audited financial statements to Plaintiff until July 2018, and by never providing the 2018 financial statements to Plaintiff. *See* [Doc. 453, p. 2]. Defendants respond that even if this were true, it would not be an "event of default" under the lease, much less fraud. [Doc. 455, p. 4]. The Court agrees.

First, by the time Defendants would have provided Plaintiff with the 2018 audited financial statements sometime in 2019, the receivership was already underway, Defendants were no longer in business and the Court had terminated the lease between the parties, returning Plaintiff's property to it. Second, even if Defendants had timely provided the financial statements to Plaintiff, it would not have contained any of the accreditation or other related-party information that Plaintiff complains was lacking from the financial statements that were provided. *See* [Motion to Dismiss Hearing, Doc. 452, p. 31:17–24 (Plaintiff admitting to the Court that there is no language in the lease that says that if Defendants did not give accurate information about accreditation then they are in default)].

Plaintiff's traditional fraud claim is due to be dismissed because it failed to establish the justified reliance element, and Plaintiff's fraud by silence claim is likewise due to be dismissed because Defendants had no duty to disclose the information that Plaintiff identified it wanted.

However, it is worth noting that Plaintiff's fraud claim is also deficient in that Plaintiff failed to <u>properly</u> allege damages—another required element to a Georgia fraud claim. *Intervoice, Inc.*, 659 F. Supp. 2d at 1279 (quoting *Crawford*, 375 S.E.2d at 224). Plaintiff alleges that because of Defendants' fraud, Plaintiff was induced to refrain from reletting or selling the premises to a third party. *See* [Doc. 438, ¶¶ 54(b), (c), (h), (j), (k)]. Specifically, Plaintiff alleges that it rejected four written purchase offers of the leased property between 2014 and 2017. *See* [Doc. 438, ¶ 54(h)]. Defendants argue that Plaintiff falls short of Rule 9(b)'s specificity requirements yet again because the Second Verified Amended Complaint lacks factual allegations that connect the alleged fraud to the loss of the four purchase offers. [Doc. 443, p. 11].

The purchase offers Plaintiff refers to were made in March 2014, November 2016, and November 2017, and Plaintiff never tells the Court the date of the fourth. *See* [Doc. 438-17, pp. 1–14]. Plaintiff simply alleges that "[b]ecause of the representations made by Defendants to Plaintiff throughout the term of the Leases regarding its finances and its ability to remain accredited and approved under the Title IV program, Plaintiff was induced to refrain from . . . selling the leased premises to third-parties who had provided arms-length purchase offers" because Defendants misled them about the true value of the leased premises. [Doc. 438, ¶ 54(h)]. The Court finds Plaintiff's theory of damages inadequate for the following reasons.

First, Plaintiff never alleges specifically how Defendants' alleged misrepresentations (or omissions) led Defendants to decline any one of the purchase offers. Plaintiff's statement that the misstatements took place "throughout the term of the leases" fails to connect the fraud to the harm with the specificity required by Rule 9(b). [Doc. 438, ¶ 54(h)]. Rule 9(b) requires Plaintiff to allege "the content of such statements and the manner in which they misled the plaintiff." *Intervoice*, 659 F. Supp. 2d at 1280 (quoting *Ziemba*, 256 F.3d at 1202). Plaintiff alleges that Defendants made misstatements to it over the course of a four-year period. Plaintiff also alleges that it denied four written purchase offers from third parties during that same time period. What Plaintiff does not allege is how any one of the misstatements specifically caused the Plaintiff to reject any one of the purchase offers. Plaintiff alleges

> during one or more discussions between J. Wilson LaFoe and Vernon Davis, Defendants were informed of Plaintiff's potential sale of the leased premises, and during this discussion Defendants expressed an interest in buying the lease premises. In other words, Defendants knew Plaintiff may sell the leased premises and that the valuation of said property was based upon the financial information contained within the audit reports and the explanation of the Notes supplied by Defendants.

[Doc. 438, 8 54(c)]. But, again, Plaintiff never alleges that any of the information contained in the financial statements is incorrect. In sum, Plaintiff never connects the alleged fraud to the loss of the purchase offers with enough specificity to satisfy Rule 9(b).

Second, the Court is skeptical whether the Plaintiff not pursuing the purchase offers and instead maintaining the status quo under the lease with Defendants is a harm in the first place. Plaintiff never pointed to any provision of the lease that says that if Defendants lose their accreditation, they then default on the lease. In other words, so long as Defendants continued paying their rent, which they were doing during the time the purchase offers were made to Plaintiff, Plaintiff had no ability under the contractual arrangement to oust Defendants from the premises and sell the building to a third party. Because Defendants were paying their rent, it did not matter whether they maintained their accreditation for the purposes of Plaintiff evaluating the purchase offers. Because Plaintiff has failed to show damages, and because damages is a required element of a Georgia tort claim, Plaintiff's fraud claim is due to be denied on this additional ground. *Intervoice, Inc.*, 659 F. Supp. 2d at 1279 (quoting *Crawford*, 375 S.E.2d at 224).

### 3.    Negligent Misrepresentation

Even if Plaintiff's negligent misrepresentation claim is properly before the Court, it is due to be dismissed for the same reason that Plaintiff's fraud claim is due to be dismissed. As Plaintiff notes in its Response to Defendants' Motion to Dismiss, "[n]egligent misrepresentation is similar to fraud and requires the same elements of proof, the only difference being whether the defendant knowingly or negligently made the misrepresentations." [Doc. 444, p. 14 (quoting *American Casual Dining, L.P. v. Moe's*

*Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1365–66 (N.D. Ga. 2006))]. Because the Court is satisfied that Plaintiff fails to properly allege the elements of justified reliance and damages—elements to a claim for negligent misrepresentation and fraud alike— Plaintiff's negligent misrepresentation claim must also be dismissed.

### 4.    Derivative claims

Since Plaintiff's fraud and negligent misrepresentation claims have been dismissed, the derivative claims for attorney's fees, costs, interest, and punitive damages also fail. "The derivative claims of attorney fees and punitive damages will not lie in the absence of a finding of compensatory damages on an underlying claim." *D.G. Jenkins Homes, Inc. v. Wood*, 282 S.E.2d 478, 482 (Ga. Ct. App. 2003). Merely derivative claims stemming from a tort claim that has been dismissed must also be dismissed. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1304 (11th Cir. 2009) (citing *D.G. Jenkins*, 282 S.E.2d at 482). Therefore, Plaintiff's claims for attorney's fees, costs, interest, and punitive damages are dismissed, but the Court will allow the portion of Plaintiff's attorney's fees claim that derives from the breach of contract claim to proceed.

### CONCLUSION

The Court **GRANTS** Defendants' Motion to Dismiss [Doc. 443] Plaintiff's fraud, negligent misrepresentation, attorney's fees, costs, interest, and punitive damages claims. Accordingly, Plaintiff's breach of contract claim, and related attorney's fees claim, is the only claim remaining in this action.

**SO ORDERED**, this 24th day of February, 2021.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**